FILED by   TB   D.C.

Dec 1, 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 16-20897-CR-SEITZ/TURNOFF

Case No. _____

UNITED STATES OF AMERICA

v.

PRINCESS CRUISE LINES, LTD.,

              **Defendant.**
_____/

### INFORMATION

The United States Attorney for the Southern District of Florida and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice charge:

### COUNT 1
### (Conspiracy - 18 U.S.C. § 371)

### Introduction

    1.    Defendant Princess Cruise Lines, Ltd., (doing business as and hereafter referred to as "Princess Cruises") is the third largest cruise line in the world and a wholly-owned indirect subsidiary of a parent company that owns and operates multiple cruise lines, which collectively comprise the world's largest cruise line. Princess Cruises and its parent company are headquartered in the United States. Princess Cruises owns and operates 17 cruise ships that call in more than 300 ports and destinations around the world. Princess Cruises, acting through its agents and employees, who were acting within the scope of their agency and employment, and for the benefit of Princess Cruises, owned, operated, and managed the *Caribbean Princess*.

2.      The *Caribbean Princess* is a cruise ship that entered into service in 2004. It is approximately 112,894 gross tons in displacement and 952 feet in length, with a guest capacity of 3,142, plus a crew of 1200.  The *Caribbean Princess* is registered in Bermuda and sails regularly to and from various United States ports, including the Port of Miami, and ports in Maine, Massachusetts, New Jersey, New York, Puerto Rico, Rhode Island, South Carolina, Texas, and the Virgin Islands.

3.      The Engine Department of the *Caribbean Princess* was headed by a Chief Engineer and Senior First Engineer that supervised ship-board operations and personnel within the Department. The *Caribbean Princess* had an "Environmental Officer" assigned to numerous duties, including tasks not related to environmental compliance.

4.      Engine Department operations on large marine vessels like the *Caribbean Princess* generate large quantities of oil-contaminated bilge waste created when water mixes in the bottommost part of the vessel, known as the bilges, with oil leaked and dripped from the engines' lubrication and fuel systems. These "oily mixtures," including "bilge slops" and "slops from bilges" and are collected and stored on board.  If the oily mixture levels were to rise too high, it could make the vessel unstable and cause electrical and fire hazards.  As a result, the accumulated bilge waste must be periodically disposed of either by off-loading it to a waste reception facility when the ship is in port via a barge or truck, burning it in the incinerator, or discharging it overboard after utilizing a pollution prevention control system incorporating an Oil Water Separator and an oil-sensing device known as an Oil Content Monitor. The Oil Content Monitor is designed to evaluate the oil content in a sample of the effluent after passing through the Oil Water Separator. If the Oil Content Monitor determines that the oil content of the effluent exceeds

fifteen (15) parts per million ("ppm"), then an audio and visual alarm will sound and a solenoid-actuated three-way valve is triggered, redirecting the oily waste to a storage tank aboard the vessel. Only after the oil content is determined to contain a concentration of fifteen (15) ppm or less, may it be pumped overboard.

**Legal Framework**

5.  The United States is party to an international agreement that regulates the discharge of oil from vessels at sea: The International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol"). The MARPOL Protocol is embodied in agreements that the United States has ratified and has been implemented in the United States by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901, *et seq.* APPS makes it a crime for any person to knowingly violate the MARPOL Protocol, APPS, or regulations promulgated under APPS. These regulations apply to all commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States.

6.  The MARPOL Protocol established a standard for the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under the MARPOL Protocol, machinery space oily mixtures may be discharged overboard into the ocean only if it does not exceed fifteen (15) ppm of oil and the ship has in operation required pollution prevention equipment, to include oil filtering equipment (*e.g.*, an Oil Water Separator), an alarm and an automatic stopping device (*e.g.*, an Oil Content Monitor and a solenoid-actuated three-way valve) to prevent the discharge of an oily mixture containing more than the legally permitted

3

concentration of oil.

7. To ensure that oily mixtures are properly processed and disposed of, Regulation 20, of MARPOL Annex I and Title 33, Code of Federal Regulations, Section 151.25(a), (d), and (h), provided that, with regard to commercial vessels of more than 400 gross tons, the person or persons in charge of an operation involving the transfer, discharge or disposal of oily mixtures was required to fully record every operation, without delay and on a tank to tank basis, in a log known as an Oil Record Book. All transfers, discharges and disposals of oily mixtures were required to be recorded in the Oil Record Book, and all emergency, accidental, or other exceptional discharges of oil or oily mixtures, including a statement of the circumstances of, and reasons for, the discharge, were also required to be recorded in the Oil Record Book, pursuant to Title 33, Code of Federal Regulations, Section 151.25(g). The Oil Record Book was required to be maintained on board the vessel for not less than three years and be readily available for inspection at all reasonable times, pursuant to Title 33, Code of Federal Regulations, Section 151.25(k).

8. The United States Coast Guard (U.S. Coast Guard), an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under Title 14, United States Code, Section 89(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with the MARPOL Protocol, APPS, and related regulations. In connection with its inspections, the U.S. Coast Guard is authorized to examine the vessel's Oil Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment, whether it poses a danger to United States ports and waters, and whether the vessel has discharged oily waste in violation of law, pursuant to Title 33, Code of Federal Regulations, Section 151.23(a)(3) and (c). In conducting

inspections, the U.S. Coast Guard relies on the vessel's Oil Record Book and statements of the crew to determine whether the vessels' crew are properly handling oily waste, pursuant to Title 33, Code of Federal Regulations, Section § 151.23(c). In the case of a violation of MARPOL, the U.S. Coast Guard may refer the matter to the vessel's flag state as well as take enforcement action including detaining the vessel and prohibiting it from entering or departing U.S. ports and waters.

9. Beginning on an unknown date, but including from on or about 2005, and continuing through on or about September 14, 2013, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**PRINCESS CRUISE LINES, LTD.,**

acting by and through its agents and employees, who were acting within the scope of their agency and employment, and for the benefit of Princess Cruises, and other persons known and unknown, did knowingly and willfully combine, conspire, confederate, and agree to violate the laws of the United States as set forth below:

A. **Illegal Discharges in Violation of the Act to Prevent Pollution from Ships:** To knowingly discharge overboard oily mixtures, including oily bilge water and slops from bilges that accumulated in machinery spaces, into the territorial sea of the United States and within 12 nautical miles of land, without processing by and having, in operation, an Oily Water Separator and an Oil Content Monitor, in violation of the Act to Prevent Pollution from Ships, Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal Regulations, Section 151.10(b);

B. **Failure to Maintain Environmental Records:** To knowingly fail to fully maintain an accurate Oil Record Book for the *Caribbean Princess* in which in which all discharges and disposals otherwise of oily mixtures, including oily bilge water and slops from bilges and bilge water that accumulated in machinery spaces, and which were discharged overboard through bypass equipment and procedures that circumvented the Oily Water Separator and Oil Content Monitor, were accurately recorded, in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal Regulations, Section 151.25;

5

C. **Obstruction of Justice:** To knowingly conceal, cover up, falsify and make false entries in the Oil Record Book of the Caribbean Princess with the intent to impede, obstruct, and influence the investigation and proper administration of a matter including U.S. Coast Guard port state control inspections within the jurisdiction of the Department of Homeland Security and U.S. Coast Guard, and in relation to and in contemplation of such a matters and proceedings, in violation of Title 18, United States Code, Section 1519; and

D. **Obstruction of Justice**: To knowingly and corruptly influence, obstruct, and impede and endeavor to corruptly influence, obstruct and impede, the due and proper administration of the law under a pending proceeding by U. S. Coast Guard and Department of Homeland Security, specifically, inspections of the *Caribbean Princess* in United States ports to determine the vessel's compliance with United States law, in violation of Title 18, United States Code, Section 1505.

## Manner and Means

The manner and means by which Princess Cruises and its co-conspirators sought to effectuate the objects and purposes included, among others, the following:

10. Princess Cruises routinely discharged and caused the discharge of oily mixtures overboard and disposals otherwise of oily mixtures, including oily mixtures that accumulated in machinery spaces of the *Caribbean Princess,* directly into the ocean at various times and places, likely including within the Territorial Sea and Exclusive Economic Zone of the United States, and with the use of equipment and procedures that bypassed the Oily Water Separator and Oil Content Monitor.

11. Princess Cruises made and used various pipes, hoses and pumps in order to discharge oily mixtures that had accumulated in an oily bilge holding tank without the use of the Oily Water Separator and without the use of an Oil Content Monitor. Bypass methods included the following:

6

a. Bilge double bottom tanks and bilges discharged overboard through graywater tank #11 with the use of a portable pump and flexible hose;

b. Oily bilge tank discharged overboard through graywater tank #11 with the use of a portable pump and flexible hose;

c. Oily bilge tank discharged overboard with the use of a portable pump and flexible hose that discharged into the sounding tube for the laundry drain tank;

d. Oily bilge tank discharged overboard through graywater tank #11 using a threaded stub pipe with valve; and

e. Oily bilge tank discharged overboard through graywater tank #11 using the standing bypass pipe, flexible hose and carbon filter pump.

12. Princess Cruises operated the Oily Water Separator at the same time as bypassing occurred through the graywater system for the express purpose of creating a false electronic record to account for the waste that was discharged illegally and in violation of MARPOL.

13. Princess Cruises operated the Oily Water Separator with a sea water valve open for the express purpose during operation of the Oily Water Separator in order to prevent and silence alarms that otherwise would have sounded and prevented discharges that contained oil in concentrations more than 15 ppm.

14. Princess Cruises, knowing of regular overflows of graywater into the engine room machinery spaces, failed to correct known design and equipment issues, and maintenance issues that caused the spills and directed lower-level crewmembers to clean up the waste by pumping it from the bilge spaces back into the graywater system which was then discharged overboard without the use of the Oily Water Separator or Oil Content Monitor.

15. Princess Cruises, knowing of regular overflows of graywater into the engine room machinery spaces, installed unauthorized "stub pipes" on the graywater system that could be used to pump the overflows back into the graywater system.

16. Princess Cruises and members of the conspiracy placed the graywater system in a mode that continuously pumped overboard whenever the ship was more than four (4) nautical miles from land thus resulting in the overboard discharges within the navigable, territorial sea, and Exclusive Economic Zone of the United States of oily mixtures that had been transferred to the graywater system.

17. Princess Cruises and members of the conspiracy reverse engineered the Oil Record Book for the *Caribbean Princess* by making entries based on data from an overboard volumetric counter rather than actual volumetric measurements ("soundings") of tanks knowing that such that entries were not accurate and did not account for oily waste being discharged via the graywater system or the introduction of seawater.

18. Princess Cruises and members of the conspiracy presented and had available for presentation during inspections by the U.S. Coast Guard Oil Record Books for the *Caribbean Princess* that contained false and fictitious entries intended to cover up and conceal illegal discharges of oily mixtures that had been made with the use of bypass equipment and procedures that circumvented required pollution prevention equipment.

## Overt Acts

19. In furtherance of the conspiracy and to effect the objects thereof, there was committed and caused to be committed by Princess Cruises and other persons known and unknown to the U.S. Attorney's Office and the Assistant Attorney General for the Environment and Natural

Resource Division of the U.S. Department of Justice, within the Southern District of Florida, and elsewhere, at least one of the following overt acts among others:

Overt Act 1: On or about August 26, 2013, Princess Cruises deliberately bypassed required pollution prevention equipment and discharged approximately 16 cubic meters (approximately 4,227 gallons) of oily mixtures from the *Caribbean Princess* within the Exclusive Economic Zone of England, approximately 23 nautical miles from shore.

Overt Act 2: On or about August 26, 2013, before the illegal discharge that day, the Chief Engineer refused to properly offload oily mixtures in port and stated to a subordinate engineer that it would been too expensive and that a shore-side Superintendent would not want to approve or pay the cost.

Overt Act 3: On or about August 27, 2013, the Chief Engineer justified the discharge on August 26, 2013, by telling a subordinate engineer that the discharge was necessary because it would have been too expensive to properly offload the oily mixtures in port.

Overt Act 4: On or about August 27, 2013, the Chief Engineer and Senior First Engineer of the *Caribbean Princess* directed the removal of the bypass pipe that had been used to make illegal discharges since at least approximately June 2013, including the discharge on August 26, 2013.

Overt Act 5: Between on or about August 26, 2013, and on or about September 11, 2013, and prior to their removal from the vessel, the Chief Engineer and the Senior First Engineer met with and instructed subordinate engineers and lower-level crew members to deny the existence and use of bypass equipment and procedures used to circumvent the Oily Water Separator and Oil Content Monitor.

Overt Act 6: On or about September 14, 2013, lower-level crew members made false statements to U.S. Coast Guard inspectors, denying the use and the removal of bypass equipment, consistent with the instructions that they had been given by the prior Chief Engineer and Senior First Engineer.

Overt Acts 7 through 18: On or about the following dates and following locations, during inspections by the U.S. Coast Guard of the *Caribbean Princess,* Princess Cruises made, used, presented, had available for presentation an Oil Record Book for the *Caribbean Princess* that contained false and fictitious entries intended to cover up and conceal illegal discharges of oily mixtures that had been made with the use of bypass equipment and procedures that circumvented required pollution prevention equipment:

| Overt Act | Inspection Date | Location |
|---|---|---|
| 7 | September 14, 2013 | New York, NY |
| 8 | February 16, 2013 | Ft. Lauderdale, FL |
| 9 | September 21, 2012 | New York, NY |
| 10 | September 7, 2012 | New York, NY |
| 11 | March 5, 2012 | St. Thomas, USVI |
| 12 | February 20, 2012 | St. Thomas, USVI |
| 13 | August 25, 2011 | Boston, MA |
| 14 | February 28, 2011 | St. Thomas, USVI |
| 15 | November 12, 2010 | San Juan, PR |
| 16 | August 30, 2010 | Boston, MA |
| 17 | August 9, 2010 | Boston, MA |
| 18 | May 9, 2010 | New York, NY |

Overt Acts 19 through 24: On or about the following dates, Princess Cruises discharged overboard and caused the discharge overboard of oily mixtures, including oily bilge water from the *Caribbean Princess*, during cruises to and from the Southern District of Florida, without the use of required pollution prevention equipment including an Oily Water Separator and Oil Content

10

Monitor:

| Overt Act | Approximate Date |
|---|---|
| 19 | April 2013 |
| 20 | March 2013 |
| 21 | February 2013 |
| 22 | January 2013 |
| 23 | December 2012 |
| 24 | November 2012 |

Overt Acts 25 through 30: On or about the following dates, in U.S. ports and U.S. waters in the Southern District of Florida, the Defendant failed to maintain an accurate Oil Record Book for the *Caribbean Princess* in which all overboard discharges of oily water mixtures, including oily bilge water were accurately recorded:

| Overt Act | Approximate Date |
|---|---|
| 25 | April 2013 |
| 26 | March 2013 |
| 27 | February 2013 |
| 28 | January 2013 |
| 29 | December 2012 |
| 30 | November 2012 |

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 5
(Act to Prevent Pollution from Ships - 33 U.S.C. § 1908(a))

On or about the following dates, each of which constitutes a separate count, within the ports and waters of the United States, in the Southern District of Florida, the defendant,

**PRINCESS CRUISE LINES, LTD.,**

acting through its agents and employees, who were acting within the scope of their agency and employment and for the benefit of Princess Cruises, did knowingly fail to maintain an Oil Record Book for the *Caribbean Princess* in which all disposals of oily mixtures, including oily bilge water and slops from bilges, that accumulated in machinery spaces of the *Caribbean Princess,* were fully recorded.  Specifically, on or about each date Princess Cruises failed to maintain an accurate Oil Record Book, by failing to disclose exceptional discharges in which overboard discharges of oily mixtures, including oily bilge water and slops from bilges, that accumulated in machinery spaces of the *Caribbean Princess,* had been made without the use of an Oily Water Separator and Oil Content Monitor, and falsely indicating the proper use of required pollution prevention equipment:

| Count | Approximate Date |
|---|---|
| 2 | April 2013 |
| 3 | March 2013 |
| 4 | February 2013 |
| 5 | January 2013 |

In violation of Title 33, United States Code, Section 1908(a), Title 18, United States Code, Section 2, and Title 33, Code of Federal Regulations, Section 151.25.

## COUNTS 6 – 7
### (Obstruction of Proceedings – 18 U.S.C. § 1505)

On or about the following dates, each of which constitutes a separate count, within the ports and waters of the United States in the Southern District of Florida, and elsewhere, the defendant,

**PRINCESS CRUISE LINES, LTD.,**

acting through its agents and employees, who were acting within the scope of their agency and employment and for the benefit of Princess Cruises, did corruptly influence, obstruct, and impede,

12

and endeavor to influence, obstruct, and impede, the due and proper administration of the law under a pending proceeding by the U.S. Coast Guard and the Department of Homeland Security, namely, an inspection of the *Caribbean Princess* to determine the vessel's compliance with United States law, in that the presented and caused the presentation and made available for presentation to the U. S. Coast Guard a false, fictitious and misleading Oil Record Book for the *Caribbean Princess* did not fully record, and otherwise concealed, discharges overboard of bilge waste made without the use of the vessel's required pollution prevention equipment:

| Count | Inspection Date | Location |
|---|---|---|
| 6 | February 16, 2013 | Ft. Lauderdale, FL |
| 7 | March 5, 2012 | St. Thomas, USVI |

In violation of Title 18, United States Code, Section 1505.

WILFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Thomas Watts-FitzGerald
Assistant U.S. Attorney

JOHN C. CRUDEN
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT & NATURAL RESOURCES

By: Richard A. Udell
Senior Litigation Counsel
Environmental Crimes Section

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| vs. | |
| PRINCESS CRUISE LINES, LTD, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| **Defendant.** _____ / | **Superseding Case Information:** |

**Court Division**: (Select One)

| | | | |
|---|---|---|---|
| _X_ Miami | ____ Key West | New Defendant(s) | Yes ____ No ____ |
| ____ FTL | ____ WPB  ____ FTP | Number of New Defendants ____ |
| | | Total number of counts ____ |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   _NO_
   List language and/or dialect  _____

4. This case will take _0_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                            (Check only one)

   | I | 0 to 5 days | _X (PLEA)_ | Petty | ____ |
   |---|---|---|---|---|
   | II | 6 to 10 days | ____ | Minor | ____ |
   | II | 11 to 20 days | ____ | Misdem. | ____ |
   | IV | 21 to 60 days | ____ | Felony | _X_ |
   | V | 61 days and over | ____ | | |

6. Has this case been previously filed in this District Court?   (Yes or No)   _NO_
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   _NO_
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)   _NO_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____ Yes   _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____ Yes   _X_ No

_____
THOMAS WATTS-FITZGERALD
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0273538

*Penalty Sheet(s) attached                                                                 REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: PRINCESS CRUISE LINES, LTD

**Case No**: _____

Count #1:

Conspiracy

Title 18, United States Code, Section 371

**\* Max. Penalty**:   $500,000

Counts #2-5:

Act to Prevent Pollution from Ships

Title 33, United States Code, Section 1908(a)

**\*Max. Penalty:**   $500,000 as to each count

Counts #6-7:

Obstruction of Proceedings

Title 18, United States Code, Section 1505

**\*Max. Penalty:** $500,000 as to each count

Count #:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) Case No. |
| PRINCESS CRUISE LINES, LTD. | ) |
|  | ) |
| *Defendant* | ) |

**WAIVER OF AN INDICTMENT**

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*