

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Environmental Crimes Section*  *Telephone (202) 305-0321*
*P.O. Box 7611*  *Richard.Udell@usdoj.gov*
*Ben Franklin Station*
*Washington, DC  20044-7611*

March 26, 2018

David N. Kelley, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, NY  10036

    Re:    United States v. Princess (Case No. 1:16-cr-20897)

Dear Mr. Kelley:

    We are writing in response to your letter dated March 14, 2018. The information provided, and that which was not provided, regarding Carnival's previously undisclosed Environmental Ship Assistance Visit Program ("ESAVP") are of great concern to the United States. In order to understand our concern, it is important to revisit the history of this issue.

    At the hearing on December 4, 2017, we raised an issue that had come to our attention concerning "SWAT teams" dispatched by Carnival to pre-audit ships in an effort to scrub them prior to the scheduled Third Party Audits ("TPA") performed pursuant to the Court-sanctioned Environmental Compliance Plan ("ECP"). You discussed the matter with Admiral Burke and confirmed that such audits had been taking place, but that they would stop immediately. In light of Carnival's agreement to stop the pre-audits, you suggested it was not necessary to place our concerns on the record during the hearing. We could not agree to this request and explained the government's concerns to the Court.

    First, we explained that the purpose of the external audits required by the ECP were to determine the actual state of compliance and that the TPA audits could be undermined if a SWAT team from the company had secretly attended the ship and cleaned up undisclosed problems in advance. We were particularly concerned because we had neither been informed of the pre-audit program nor informed about what problems had been discovered. To make matters worse, the government learned and brought to the Court's attention, that apparently part of the secret program was that the problems identified were not documented as would typically be the case in any audit program, thus suggesting that the real goal was to conceal problems rather than identify them, correct their root causes, and be transparent with the interested parties and the Court. As we have

discussed, the process of identifying problems, identifying root causes, and sharing the information across the fleet is a critical part of building a culture of compliance.

At the December 4th hearing, the government warned that if the secret pre-audit program did not stop, the government could revisit and seek changes in the structure of the ECP, such as advocating in favor of the proposal made by the Court at the last hearing when learning of the prior pre-audit program – that future ECP audits be unannounced.

You will recall that the following colloquy took place:

> MR. KELLEY: Your Honor, if I may, as I understand it, there have been for some of the audits, if not most, not teams. There has been one or two people who have gone to try to get the ship in a position where they prepared or are ready for the audit. As I told Mr. Udell, to the extent that we've done that, we will do it no more.
>
> THE COURT: Okay. I'm going to rely on you and your representation as an officer of the Court. You know what happens if you bankrupt your credibility bank account. You're out of here.
>
> MR. KELLEY: I do, Your Honor. I'm glad that the client is here to hear it.

With this background, Carnival's ESAVP appears contrary to the representations made to the Court and the United States at the last hearing. Having reviewed the materials distributed by the Court Appointed Monitor – and not provided to the government by your client or with your letter – we have observed that the program was apparently initiated in February 2018, shortly after the December hearing in which your client categorically stated that it would stop the pre-audit program and closely tied to the ECP audit program.

In looking into this matter, we have further learned that Carnival's Corporate Compliance Manager ("CCM") was reportedly not supervising the new program. If this understanding is correct, then it raises a host of questions given the role of the CCM as established by the ECP. If the CCM was not overseeing this program, then who initiated the ESAVP and to whom were the results being reported? How were problems and observations being communicated throughout the company and to the interested parties?

The government has further observed that the ESAVP was not disclosed in either your client's monthly reports to the Office of Probation or your letter to the Office of Probation dated March 9, 2018, touting various remedial measures taken by your client in anticipation of the first anniversary of sentencing. The non-disclosure creates the impression that the new program, which you represent to be nothing more than an effort to support and educate employees, remains a secret scheme tied directly to the audit schedule and ECP. In this regard, we note the following: (1) the "Assistance Visit Checklist" spreadsheet has a tab entitled Pre-Audit Checklist; (2) the "Assistance

Visit Checklist" has a tab listing the TPA's per ship findings of nonconformities and observations; and (3) the "Interim – Environmental Ship Assistance Visit 2018" spreadsheet has a tab listing the known TPA audit dates and TPA embark and disembark ports.

In order to assess the context, intent and impact of both programs, for the sake of transparency, and to determine Carnival's compliance with the plea agreement, the United States requests documentation and responses to the questions as set forth below:

1. With regard to the ESAVP, please provide all records, including but not limited to emails, drafts, revisions, and notes, relating to the creation, design, purpose, establishment, initiation, implementation and/or termination of the program. This request includes, but is not limited to:

    a. All emails relating to the program written or received by Carnival's representatives present at the hearings on October 18 and December 4, 2017.

    b. Such records as will show the budget for the program and those who authorized and approved the expenditure of funds.

    c. Such records as will show the involvement or awareness of Carnival's Brands, Operating Lines, or Company management.

    d. Such records as will show what notification was made to, or approval sought or received from, the Board of Directors and/or the HESS Board.

    e. Such records as will show all personnel who were assigned any responsibilities for the creation, design, purpose, establishment, initiation, implementation, management of the program and any instructions provided by management or by them to others.

    f. Any documents related to the program that mention the Court, the Office of Probation, the criminal proceeding, the government, the TPA, or the CAM.

    g. All records of communications and instructions from Carnival, Brand and/or Operating Lines to vessels and/or employees disclosing the date of audits/visits to be performed by the TPA or CAM.

    h. All forms, surveys or requests issued to crew members regarding topics or issues to be covered by the program, TPA audits, CAM visits and the responses thereto.

    i. All records generated or distributed by those performing the visits, that include notes by those conducting the inspections or visits, checklists, findings, deficiencies, corrective actions recommended and/or taken, reports,

      photographs, and any resulting personnel actions. This request includes all communication from those performing the visits with management concerning the visits.

2. With regard to the "SWAT" program in place before the Environmental Ship Assistance Program, please provide all records, including emails, relating to the creation, design, purpose, establishment, initiation, implementation and/or termination of the program, including drafts and revisions. This request includes, but is not limited to:

   a. Such records as will show all personnel who were assigned any responsibilities for creation, design, purpose, establishment, initiation, and/or implementation of the program; any instructions provided to them by management.

   b. Any documents related to the program that mention the Court, the Office of Probation, the criminal proceeding, the government, the TPA, or the CAM.

   c. Such records as will show the budget for the program and those who authorized and approved the expenditure of funds.

   d. Such records as will show the schedule for performing such visits on each of the Operating Lines and each vessel.

   e. Such records as will show what notification was made to, or approval sought or received from, the Board of Directors and/or the HESS Board.

   f. All records of communications and instructions from Carnival, Brand and/or Operating Line to vessels and/or employees disclosing the date of audits to be performed by the TPA or CAM.

   g. All forms, surveys or requests issued to crew members regarding topics or issues to be covered by the program, TPA audits, CAM visits and the responses thereto.

   h. All records generated by those performing the visits, including but not limited to those containing inspection or visit notes, findings, deficiencies, corrective actions recommended and/or taken, reports, photographs, and any resulting personnel actions. This request includes all communication from those performing the visits to management concerning the visits.

3. Please provide a written explanation as to why neither of the above mentioned programs were included in the Monthly U.S. Probation Office Supervision Report provided to the Office of Probation.

4. Please provide a written explanation as to why the ESAVP was not included in your letter to the Office of Probation dated March 9, 2018.

                    Sincerely,

                      ____/s/_____
                      Richard A. Udell
                      Senior Litigation Counsel
                      Environmental Crimes Section
                      U.S. Department of Justice

                      ____/s/_____
                      Thomas Watts-FitzGerald
                      Assistant U.S. Attorney