## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  16 -20897-CR-SEITZ

**UNITED STATES OF AMERICA**

**v.**

**PRINCESS CRUISE LINES, LTD.,**

**Defendant.**

_____/

### UNITED STATES' RESPONSE IN OPPOSITION
### TO EMERGENCY MOTION TO INTERVENE

The United States, through counsel, hereby responds in opposition to the Emergency

Motion To Intervene To Assert Rights Under The Crime Victims Rights Act [D.E.- 129],[1] filed on

behalf of three individuals who assert "victim" status pursuant to the Crime Victims' Rights Act

(CVRA), Title 18, United States Code, Section 3771, and Federal Rules of Criminal Procedure

60(a)(3 and (b)(1), and prays this Honorable Court will deny said Motion in all respects, except as

discussed, herein. In support of its position, the United States would respectfully show:

---

[1] At approximately 10:40 pm on June 2, 2019, a pleading styled "Notice of Joinder of Additional Victim in Emergency Motion To Intervene To Assert Rights Under the Crime Victims' Rights Act (DE 129)" was filed [D.E.-132], seeking to add an additional "victim" to the three previously identified in D.E.-129. This possibility had been discussed with government counsel during a conference call initiated by the government earlier in the day to solicit input from the intervenors regarding their view of an appropriate settlement of the probation violation matter pending before the Court. Nothing was proffered in that regard beyond the suggestions contained in the Declarations provided as D.E.-129-4, 5, and 6. The letter dated June 2, 2019 by Ronn Bischmann [D.E.-132-3] reflects his request that his letter be made a part of the Court's record but requests no specific relief, does not even request involvement in the case, and identifies no direct and proximate harm from the various acts of pollution he describes.

## I.  __BACKGROUND__

Movants herein are residents of the State of Alaska and the Commonwealth of the Bahamas. D.E.129-4, 129-5, 129-6. Each asserts a keen (and apparently genuine) interest in the quality of the marine and atmospheric environment in their respective locales and concerns that cruise ship operations have a degrading effect on those environments. None, however, alleges a direct, proximate harm from the underlying crime of which the defendant stands convicted.[2] Rather they identify trends and concerns arising from the scope of cruise ship activities in their respective locales and decry the failure of the Environmental Compliance Plan (ECP) to secure the level of compliance and improvement they believe necessary to safeguard their environments.

The United States respects the observations of individuals who have regular contact with the "covered vessels" within the scope of the ECP. It has and will continue to investigate and refer for investigation allegations that appear to have merit. In this instance, the government has made the Coast Guard aware of the issues raised in movants pleading and has asked the Court Appointed Monitor to review it as well.[3] At the same time, the United States is bound by the plain language and procedural limits of the CVRA.

---

[2] One movant identifies discharged trash from cruise ships and emissions into the atmosphere from such vessels as  a concern in the Bahamas and that cruise ships regularly ply the archipelagic waters of the Bahamas to the general detriment of the health of the residents and the quality of the environment. Nowhere is there identification of direct particularized harm specific to the declarant as a result of the conduct of conviction herein. D.E.-129-4. Likewise in D.E.-291-5, the declarant, identified as a commercial angler in Alaska, notes his observation of vessels operated by defendant and related cruise lines in near-Alaskan waters. He asserts that over time he has encountered areas of polluted water and observed instances of black air emissions from "Carnival ships." The declarant asserts a concern for generalized harm to fisherman and the waters of Alaska and indicates that his livelihood is dependent on the ability to market clean, fresh fish. Nowhere does he intimate that as a direct result of any activity by a specific vessel, or by the conduct of conviction in this matter, that he has been unable to do so.  The final declarant, D.E.-129-6, writing as a representative of an Alaskan-based organization and herself, provides a historical perspective on the enforcement of vessel pollution law by Alaskan authorities and asserts that there are "obvious health concerns" associated with the air polluting activities attributed in the declaration to Carnival. No direct, specific impacts are described in the declaration.

[3] Although movants have not made the requisite showing necessary, the government has nevertheless approached their counsel to provide any information that they may have as well as to provide an audience to hear their concerns first hand.

## II. **THE CVRA**

The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e). That definition does not automatically confer victim status on anyone who may have been harmed by any criminal act of a defendant. Instead, courts have held that to qualify under the statute, a person must have been harmed directly and proximately by conduct underlying an element of the defendant's offense, with the focus being not any possible offense, but on the actual charged offense. Looking beyond the elements of the defendant's offenses to allegedly related criminal conduct would not only be contrary to the plain language of the statute, but it may also require courts in many cases to engage in extensive fact-finding to determine the full scope of a particular defendant's criminal conduct.

To determine whether a person qualifies as a crime victim, the Eleventh Circuit has mandated a two-step analysis: first, it is necessary to "identify the behavior constituting commission of a Federal offense;" second, it is necessary to "identify the direct and proximate effects of that behavior on parties other than the United States. If the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA." *In re Stewart*, 552 F.3d 1285, 1288 (11th Cir. 2008).

Courts generally have limited their inquiry to "conduct underlying an element of the offense." *United States v. Sharp,* 463 F. Supp. 2d 556, 563 (E.D. Va. 2006) (internal quotation marks and citation omitted); *see also Stewart,* 552 F.3d at 1288; *but see United States v. Turner,* 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) (stating in dictum that "[w]hile the offense charged against a defendant can serve as a basis for identifying a 'crime victim' . . . the class of victims with statutory rights may well be broader."). That limitation emanates from the actual language of

the CVRA, because the statute refers to the commission of "a Federal offense."  As the Supreme

Court explained in interpreting similar language in an earlier version of a related statute, "[h]ad

Congress intended to permit a victim to recover for losses stemming from all conduct attributable

to the defendant, including conduct related to the offense of conviction, Congress would likely

have chosen language other than 'the offense,' which refers without question to the offense of

conviction."  *Hughey v. United States,* 495 U.S. 411, 418 (1990).

### III.    <u>DISCUSSION</u>

In the case at hand, the government recognizes the expressed interests of the movants in

the case at bar. They appear sincerely committed to the public interest, and to a clean and healthy

environment.  Notwithstanding, under the CVRA the parties seeking to intervene have not made a

showing that they were victims of the crimes of conviction in this case.

When direct and proximate harm is shown, crime victims are afforded several rights under

the CVRA, including the right to reasonable, accurate and timely notice, the reasonable right to

confer with the government, the reasonable right to consult with an attorney for the government,

and the right to be reasonably heard by the court at any public proceeding. 18 U.S.C. § 3771(a)(1)

– (10).

In this case, the three proposed interveners neither demonstrate nor allege that they

themselves suffered any direct or proximate harm from the "relevant criminal behavior," *Stewart,*

552 F.3d at 1287, the defendant pleaded guilty to, such as pecuniary, physical, or emotional.  They

reference only general feelings of societal sadness or anger related to the general polluting of the

environment. They have not provided any information directly linking their emotional or other inchoate injury specifically to defendant's charged conduct.[4]

The relevant criminal behavior herein stems from the underlying Information [D.E.-1], which included a general conspiracy charge laid under 18 U.S.C. § 371, Count 1; charges under the Act to Prevent Pollution from Ships pursuant to 33 U.S.C. § 1908(A), Counts 2 – 5; and Obstruction of Proceedings charged under 18 U.S.C. § 1505, Counts 6 – 7.

The Information, at Count 1, paragraph 2 notes the relevant geographical areas within the United States for the sole vessel addressed by the charges: neither Alaska nor the Commonwealth of the Bahamas are specifically identified as within the routing of the *M/V Caribbean Princess* at the relevant time, although the ship was in Caribbean waters at times. More significantly, the failure to maintain environmental records and obstructive conduct charges were offenses specifically directed at the United States Coast Guard and the Department of Homeland Security – documentation offenses that while significant, did not have direct and proximate impact on any specific Movant. *See* D.E.-1 at pp. 5-6.

The proposed interveners' reliance on *United States v. CITGO Petroleum Corp.*, 893 F. Supp. 2d 848 (S.D. Tex. 2012), is not appropriate in this case. In *Citgo*, the victims alleged that they suffered direct and proximate harm in the form of immediate negative health effects a result of the violations of the Clean Air Act. *Id.* at 853-54). Further, in *United Sates v. Dean*, 527 F.3d 391 (5th Cir. 2008)*,* the victims demonstrated that they suffered direct and proximate harm, both

---

[4] While the proposed resolution will resolve alleged probation violations in the Southern District of Florida, it has no impact on any violations of law that have taken place since the Court's acceptance of the plea agreement that may constitute a violation of law in other venues.

physical and pecuniary, as a result of criminal violations of the Clean Air Act. *Id.* at 392. In this case, the violations of the special conditions of probation are egregious, but the proposed interveners are not able to demonstrate direct or proximate harm as result of the defendant's illegal conduct.

Moreover, the proposed interveners request certain relief that the CVRA simply does not does not provide, and which is unsupported in any known authority. Specifically, the petitioners request as "victims" that they be allowed access to evidence of the on-going criminal conduct and the proposed resolution. The CVRA does not confer rights to crime victims that would allow access to this type of prosecutorial information. *United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007) (interveners did not have right to access to non-classified information).

That said, the bulk of the evidence that movants seek is publicly available to them. The parties have made quarterly and annual public filings, including detailed information about discharges to the environment made in violation of probation. The Court Appointed Monitor and the Third Party Auditor have submitted voluminous reports to the Court that appear to contain the type of information sought by movants, some of which has been made available by the Court in response to other requests from the public [D.E.-105, 107, 113-116]. Additionally, transcripts have been available to the public from the several quarterly and annual status hearings conducted by the Court. *See, e.g.,* D.E.-106. It is not apparent that movants have availed themselves of this available information.

While crime victims have the right to a reasonable opportunity to confer with government attorneys to inform the process, nothing in these rights should be construed to provide victims with rights that would direct or otherwise impair prosecutorial discretion, such as determining what

6

charges to bring and whether to negotiate a settlement. *See* 18 U.S.C. § 3771(d)(6). Nor do the CVRA rights permit victims access to evidentiary evidence that may violate a defendant's rights to due process.[5] It does not follow that the individuals in this case, who are not victims under the CVRA, be allowed such access, which is not provided for in the CVRA.

## IV.   <u>CONCLUSION</u>

The United States recommends the Court deny the motion to intervene on the basis the movants are not "crime victims" under the CVRA. However, we further respectfully suggest the Court consider providing these individuals either with an opportunity to be heard at the probation hearing, by inclusion of their previously filed Declarations [D.E.-129-4, 129-5, 129-6] in the record of proceedings as has been done with other materials received by the Court, or orally if the Court prefers. It is well established that Courts have broad latitude to receive evidence and information for sentencing purposes:

> At sentencing, trial courts have considerable discretion to permit the introduction of evidence related to, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Congress has provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also Roberts v. United States,* 445 U.S. 552, 556, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (reiterating 'the fundamental sentencing principle that a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come") (internal quotation marks omitted); *United States v. Rucker,* 133 Fed.Appx. 187, 193 (6th Cir.2005).

*United States v. Leach*, 206 Fed. App'x. 432, 434 (6th Cir. 2006).

---

[5] In this unusual context, all relevant facts are also within the possession of the Court either because of disclosures made by the defendant to the Office of Probation, the Court Appointed Monitor, or the Court's Third Party Auditor.

Further, while the petitioners are not victims under the CVRA, the government has expressed its willingness to confer with the individuals in the interest of justice, and consider any relevant information they possess. In fact, the government has conferred with counsel acting on their behalf, who have been advised that materials received from the Non-Governmental Organization coordinating the efforts leading to the instant Emergency Motion have been referred for consideration by the CAM and a thorough review of the issues raised therein. The government takes seriously the issues raised and will carefully review the information already provided and any additional information they may provide in the future.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:      */s/ Thomas A. Watts-FitzGerald*
          Assistant United States Attorney
          Florida Bar No. 0273538
          99 Northeast 4th Street
          Miami, Florida 33132-2111
          Tel: (305) 961-9413

          */s/ Richard A. Udell*
          Senior Litigation Counsel
          Environmental Crimes Section
          U.S. Department of Justice
          601 D Street, NW
          Washington, DC 20004
          Tel: (202) 305-0361