UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 16-20897-CR-SEITZ

UNITED STATES OF AMERICA

v.

PRINCESS CRUISE LINES, LTD.,

Defendant.
_____/

PROPOSED AGREEMENT FOR THE COURT'S CONSIDERATION RESOLVING
SUPERSEDING PETITION FOR SUMMONS FOR OFFENDER UNDER
SUPERVISION DATED APRIL 26, 2019

I. Allegations in the Superseding Petition

The defendant organization, Princess Cruise Lines, Ltd. ("Princess"), hereby admits that it committed the violations alleged in the Superseding Petition, as amended and attached hereto as Exhibit A. It further admits that defendant, its corporate parent (Carnival Corporation & plc), and related subsidiaries and entities (collectively referred to herein as the "Company"), violated terms of probation and the Environmental Compliance Plan ("ECP"), as set forth in the proposed Second Superseding Petition, and pursuant to Special Condition of Probation 4 and ECP Section III.E.1 because their violations are deemed to be violations by Princess.

II. Additional TPA Audits and CAM Visits

During the third, fourth, and fifth years of Princess's probation, the Court Appointed Monitor ("CAM") and the Third Party Auditor ("TPA") will conduct fifteen (15) audits and/or visits annually in addition to the number of audits specified in Section VIII.A.1 of the ECP and the CAM First and Second Annual Work Plan. The CAM and the TPA will decide among themselves which of those additional fifteen (15) visits will be TPA audits or CAM visits and whether they will involve Covered Vessels or shore-side facilities. The CAM team will continue its past practice of meeting with management and key personnel as necessary, conducting site visits, and attending certain corporate meetings, programs and events.

III. Statement Accepting Responsibility

The Company agrees that within 30 days of the signing of this agreement it will issue a statement to all employees in which the CEO of Carnival Corporation & plc (and other senior management if they so choose) personally accepts management responsibility for the probation violations in connection with the Court's acceptance of the proposed joint resolution of the Superseding Petition. The content, format, and mode of distribution of this statement will be subject to prior review and comment by the Government and review and approval by the Court. The statement

1

will also urge all employees to continue to cooperate with the CAM and TPA, and to continue to report incidents, near misses, and other compliance-related concerns, including making Open Reports (i.e., hotline reports) per the Company's Open Report procedure. In addition, the statement will emphasize that the Company recognizes and supports that the CAM will continue to protect the anonymity of communications made in confidence to the CAM or the CAM team.

## IV. Restructuring of Compliance Function

The Company acknowledges that it failed to establish a Corporate Compliance Manager ("CCM") with authority (including resources, budget and staff) as required to implement the ECP. Accordingly, the Company agrees to restructure its existing corporate compliance governing authority. The Company will appoint a Chief Compliance Officer ("CCO") and establish this senior corporate officer position with authority and substantial control to oversee the implementation of the Company's overall compliance functions including environmental compliance and the ECP. The Company has promoted the CCM, who will report to the CCO, to a position of Senior Vice President. The CCM will remain responsible for overseeing all legal obligations set forth in the ECP and in the conditions of probation.

The Company commits to providing the CCO and the CCM each with: the appropriate budget and staff; a substantive role in financial, strategic, and sustainability planning processes; and compliance authority over regulatory obligations and operations across and within all brands.

    a) CCO:

The CCO will have direct line reporting to the CEO, and dotted line reporting to the Audit and HESS Committees of the Board of Directors. In addition, the CCO will join the meetings of the Company's leadership team. The CCO will oversee the review, revision and development of policies and procedures in all compliance areas, implementation of such policies and procedures, and will develop and oversee the implementation of budgets that assure adequate resources for compliance within and across all brands. The CCO will also develop a written compliance strategy that will provide an overview of the Company's various compliance functions and describe a plan to achieve these goals described in the compliance strategy.

    b) CCM:

The CCM will report directly to the CCO and have a dotted line reporting relationship to the HESS Committee of the Board of Directors and the CEO. The CCM will assist the CCO with the development and implementation of the environmental-compliance aspects of the compliance strategy and plan.

Additionally, the Company will create an Executive Compliance Committee made up of executives at both Carnival Corporation & plc and its various brands, to include participation by the CCO and CCM, that will meet monthly to discuss compliance issues, share and evaluate data and trends, and set compliance priorities.

The Company will further develop an annual training curriculum for members of its Board of Directors that would include corporate compliance topics. The Board will adopt a new written statement that reiterates the Company's and the Board's commitment to compliance. The Company will immediately engage a search firm to assist the Board of Directors to recruit a new board member with significant corporate compliance experience.

The parties understand that the Company has engaged an outside consultant to advise it of the best options to improve its corporate compliance program, and to achieve a change in corporate governance (including establishing a CCO). The parties also understand that many of the provisions noted above reflect that consultant's preliminary recommendations. The Company shall provide the Court, CAM, TPA and Interested Parties[1] with the consultant's further recommendations on or before June 1, 2019, and with the Company's proposed action plan to restructure its existing corporate compliance governing authority not later than August 14, 2019. The Company's action plan, prepared in collaboration with the consultant, will include a detailed statement explaining how and when the improvements to the compliance program will be implemented. This action plan will explain how corporate governance will be restructured to:

    a) provide the CCO and CCM each with the authority and stature, budgets, staff, and the ability to implement changes, including the ability to direct change and action in each of the brands (while allowing for consultation and input from all brands). This analysis will include:

        i. a description and rationale for the change of governance structure (including where the compliance function is independently housed with sufficient autonomy and direct access to the Board and Board Committees); the revised job descriptions, qualifications, and relative seniority of the CCO and CCM within the organization; the reporting lines and frequency of required reporting;

        ii. a preliminary annual compliance budget for the various compliance responsibilities;

        iii. a summary and description of the changes in budget/resources – (actual for 2019; and proposed for 2020);

    b) establish reporting obligations within the Company.

The Interested Parties, CAM and TPA will provide any comments or suggestions about the Company's action plan to the Company not later than August 28, 2019, and the Company will provide a final version of its action plan to the Court not later than September 13, 2019. The

---

[1] The term "Interested Parties," as defined in the ECP, refers to the United States Attorney's Office for the Southern District of Florida, the Environmental Crimes Section of the United States Department of Justice, the United States Probation Office for the Southern District of Florida, the Seventh Coast Guard District (dp), and the U.S. Coast Guard Office of Investigations & Analysis.

Company, upon demonstrated good cause as determined by the Court, may seek Court approval to extend these deadlines. The Company will provide interim reports on its progress toward these goals on a monthly basis, specifically on or before July 1, and August 1, 2019. The Company's action plan will specify deadlines going forward for implementing specific actions to restructure the Company's corporate compliance function, and must contain several of the changes that will be completed not later than October 9, 2019, including the:

 i. elevation of the CCM;

 ii. creation of the CCO charter and job description;

 iii. appointment of the CCO;

 iv. creation of the Executive Compliance Committee;

 v. creation of the annual compliance training curriculum for the Board of Directors; and

 vi. issuance of a statement by the Board of Directors reiterating the Board's and the Company's commitment to compliance.

If the Company fails to meet these deadlines, the Company agrees that the Court, may impose the following sanctions, at its discretion:

Failure to meet the initial deadline of September 13, 2019, to submit an action plan to restructure compliance: up to $1,000,000.00 per day, until the date of compliance, as determined by the Court. Failure to submit an action plan to restructure compliance by September 23, 2019: up to $10,000,000.00 per day, until the date of compliance, as determined by the Court.

Failure to meet the initial deadline of October 9, 2019, to complete implementation of certain tasks to restructure compliance specified in the action plan: up to $1,000,000.00 per day, until the date of compliance, as determined by the Court. Failure to implement those aspects of the action plan by November 1, 2019: up to $10,000,000.00 per day, until the date of compliance, as determined by the Court.

The Company will provide information and access necessary for the CAM to monitor and report on compliance with the ECP and obligations of probation. Additionally, all future quarterly reports by the Company and the CAM will contain a section advising the Court of the status of implementation with this condition of probation. Failure to comply with these obligations as determined by the Court will be grounds for a revocation of probation.

The parties anticipate that changes to the Company's corporate governance may require conforming modifications to the ECP. The Company will propose any such modifications to the ECP promptly after providing its action plan in response to the compliance consultant's recommendations.

## V. Financial Penalty

If the terms of this agreement are accepted by the Court, then the defendant agrees to pay an additional financial penalty of $20 million within seven days of acceptance. Because this payment is designated as a criminal payment by Princess, the Company further agrees that it will not seek any reduction in its tax obligations as a result of the payment. In addition, because the payment is part of Princess's admission of its violations of the conditions of its probation, neither defendant nor any related entity or agent will characterize, publicize or refer to the payment in any other way.

## VI. Unified Regulatory Reporting Policy

The Company will reorganize and enhance existing policies in the Company's Environmental Management System regarding how violations of Marine Environmental Protection Requirements, and United States federal and state laws, including the Certain Alaska Cruise Ship Operations statute, are reported to external regulators in the United States and to each vessel's flag state and recognized organization. The new policy will govern the reporting requirements for discharges according to United States federal and state laws and be submitted for review and comment to the Interested Parties, CAM and TPA within 60 days of the signing of this agreement. The Interested Parties, CAM and TPA will provide comments, if any, to the Company within 21 days. The Company will adopt and implement a final policy within 30 days of the expiration of that 21-day period that addresses the comments it receives from the Interested Parties, the CAM, and the TPA. The parties, upon demonstrated good cause as determined by the Court, may seek Court approval to extend the deadlines described in this paragraph.

The Company acknowledges that there have been discharges and other releases made in violation of MARPOL during the period of probation that have not been reported to the country in whose waters the violation occurred. Accordingly, the Company agrees to a Special Condition of Probation that includes a new obligation governing the reporting of environmental discharges and releases in violation of MARPOL, the Ballast Water Convention, the London Dumping Convention, or any future maritime environmental convention to which the United States becomes a party and which goes into effect during the period of Princess's probation. This reporting requirement also will be reflected in the Company's Environmental Management System. The text of this new Special Condition of Probation Section 13 is in Exhibit B.

## VII. Proposed Amended Special Condition of Probation No. 13

The Company agrees to enhanced reporting requirements to be memorialized in a revised Special Condition No. 13, as set forth in Exhibit B, annexed hereto.

## VIII. Improvements to Waste Management

The Company acknowledges that there is a need to improve waste management of non-food waste, including plastic garbage, on Covered Vessels and by Covered Personnel. Accordingly, the Company has agreed to prioritize this issue through the creation of "tiger teams," and the establishment of a three-part program as set forth below:

**Tiger Teams**

The Company will create two "tiger teams," each made up of approximately 5-7 individuals, at least four of whom are subject matter experts in food and beverage ("SMEs") and two of whom are third party consultants with established credentials related to food waste processing systems and galley designs. All of these individuals will report directly to the CCM on matters related to this project, and the SMEs will be dedicated to the project on a full-time basis through August 2019 or until such time as necessary to develop an action plan for implementation across all brands.

The tiger teams intend to meet in Washington D.C. on June 3-7, 2019 for planning workshops in which most of the inner workings and plans will be finalized. The tiger teams will be dedicated to visiting at least 30 ships between June and August as part of an effort to do the following:

1. Benchmark process, setup, procedures, design and equipment across ships and brands
2. Review adequacy of manning
3. Review technical aspects including equipment redundancy and adequacy
4. Review food waste volume management
5. Review single-serve/use items
6. Engage crew, solicit good ideas and best practices
7. Provide recommendations to enhance food waste compliance and further standardize on process, procedures, design and equipment.

After the visits are completed and report and recommendations made in August 2019, the CCM will oversee the implementation of the recommendations and will task at least one of the individuals on the tiger teams to serve as a dedicated manager of implementation on a day-to-day basis.

The tiger teams will be a subset of a larger Task Force across all brands charged with the implementation of the action plan developed though the work of the tiger teams.

The Company and the CAM will update the Interested Parties and the Court about the status of implementing this project in their quarterly status reports. The Company will provide the CAM with all information and access requested to monitor and assess this program.

**The Three-Part Program**

<u>Part One - Improved Training, Supervision, Staffing, and Culture</u>

The Company will (1) develop and implement clearer and more effective procedures regarding the disposal of food waste; (2) develop new training and signage to ensure that the proper procedures are understood; and (3) use appropriate media, in particular video, to call attention to the new training, procedures, and the renewed commitment to handling of food waste. The Company will also (4) assess the staffing levels for both the operational and compliance aspects of food waste management using a qualified third party to determine appropriate resources to comply with the updated procedures. The Company will use the results of the third party's assessment to improve the direct operational

supervision provided to employees who handle food waste, as well as enhanced compliance oversight by the Environmental Officer.

For the first three items set forth in the paragraph above, by August 1, 2019, the Company will provide to the Interested Parties, TPA, and CAM an implementation plan specifying the project, the project owner, and specific timetables.

With respect to the fourth item, the Company will retain a qualified third party to assess the necessary staffing. The Company will provide a copy of the third party assessment to the Interested Parties, CAM and TPA within seven days of receipt. Within 45 days after receiving that third party's assessment, the Company will provide the Interested Parties, TPA, and the CAM with its plan in response to the assessment. This plan will address the workload of the Environmental Officer.

Part Two - Decrease in Single-Use Plastics and Food Waste

The Company will design and implement procedures to reduce the purchase and consumption of single-use plastic items across the corporate fleet by 50 percent by December 31, 2021.[2] It will also design strategies to reduce the total weight of food waste that the Company creates by 10 percent by December 31, 2021. The Company has already begun working with its supply chain partners to determine what alternatives exist for specific single-use plastic items and how quickly the Company could substitute those alternatives for its current single-use plastics.

Part Three - Technology and Design Improvements

By October 31, 2019, the Company will review and provide an analysis of: (1) new food waste disposal technologies; (2) options for redesign of existing food waste disposal systems and associated processes; and (3) the optimization of food waste disposal systems and associated processes. By January 31, 2020, the Company shall provide to the Interested Parties, TPA, and CAM an implementation plan to optimize food waste management, including food waste disposal systems and associated processes, specifying projects, the project owners, and specific timetables for milestones. The Company has committed a minimum of $20 million in capital expenditures throughout the remainder of Princess's probation to optimize food waste management, including food waste disposal systems and associated processes.

---

[2] Single-use plastic items include, among others, the following: straws, cups, lids, stir sticks, cutlery, cocktail picks, tooth picks, butter packets, serving sauce packets, honey packets, sugar packets, sweetener packets, plastic bags in retail stores, Company-provided Q-tips, Company-provided individual shampoo bottles, plastic garbage bags in cabins, and balloons used during outdoor events. Please note that the complete elimination of some items could pose public health concerns (e.g., plastic trash bag liners, plastic water bottles, and single-serving yogurt containers).

7

### IX. Proposal Binding on the Government

The United States Attorney's Office for the Southern District of Florida and the Environmental Crimes Section of the U.S. Department of Justice agree to forgo additional probation violation proceedings in *U.S. v. Princess Cruises Lines, LTD*, Case No. 16-CR-20897 (S.D.Fla) for violations that took place prior to May 1 2019, and which are known to the United States Attorney's Office for the Southern District of Florida and the Environmental Crimes Section of the U.S. Department of Justice at the time of the signing of this agreement.

AGREED AND ACCEPTED

ARIANA FAJARDO ORSHAN
United States Attorney

By: *[signature]*
Thomas Watts-FitzGerald
Assistant United States Attorney

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environmental & Natural Resources Division
U.S. Department of Justice

By: *[signature]*
Richard A. Udell
Senior Litigation Counsel
Environmental Crimes Section
U.S. Department of Justice

ON BEHALF OF DEFENDANT:

_____  6/3/19
David N. Kelley                          Date
Benjamin E. Rosenberg
Counsel for Defendant

_____  6/3/19
David Oscar Markus                Date
Counsel for Defendant

ON BEHALF OF DEFENDANT:

_____  6/3/19
Micky Arison                            Date

Member of the Executive Committees of the Boards of Directors
Carnival Corporation and Carnival plc

ON BEHALF OF DEFENDANT:

_____  6/3/19
Arnold Donald                          Date

Member of the Executive Committees of the Boards of Directors
Carnival Corporation and Carnival plc

ON BEHALF OF DEFENDANT:

_____  6/3/19
Stuart Subotnick                      Date

Member of the Executive Committees of the Boards of Directors
Carnival Corporation and Carnival plc

## Exhibit A

## Proposed Second Superseding Petition

1. **Violation of Special Condition**; by interfering with the implementation of the Environmental Compliance Plan ("ECP"), Third Party Auditor ("TPA") audits, and the Court's supervision of probation, as set forth in the plea agreement, Special Condition 13, and Section VIII.B.1 of the ECP. From on or about December 9, 2017, through on or about March 13, 2018, the defendant corporation and related entities (a) conducted an undisclosed program to visit ships for the purpose of finding and remedying environmental compliance issues, and after being advised by the Court that it disapproved of a previous undisclosed ship visit program; and (b) violated the ECP Section I.G, by failing to promptly notify the Court, the Court Appointed Monitor ("CAM") and the Interested Parties[1] about the existence of the vessel visit program.

2. **Violation of Special Condition**; by failing to provide sufficient responsibility and authority to the Corporate Compliance Manager ("CCM") to implement the ECP, as required by Section III.A of the ECP. For example, the defendant corporation and related entities subject to the ECP implemented a vessel visit program without authorization or knowledge of the CCM after the December 4, 2017 status hearing.

3. **Violation of Special Condition**; by failing to comply with the Required Compliance Program. On or about June 8, 2017, the defendant corporation and Costa Cruises falsified training records on board the M/V Diamond Princess and M/V Costa Luminosa pursuant to Carnival Corporation Notice of Violations #04-2017 and #06-2017.

4. **Violation of Special Condition**; by failing to comply with the Required Compliance Program. Specifically, between in or about March 2018, to in or about May 2018, the defendant and related entities sought an amendment to the definition of a "Major Non-Conformity" in the ECP, but were advised that the Coast Guard, the Department of Justice, the CAM and the TPA disagreed with the proposed change and that the Company should file a motion with the Court if they wished to modify the definition of an ECP Major Non-Conformity or its application by the TPA. On or about June 19, 2018, after the proposed change had been rejected by the Interested Parties, without notifying the Interested Parties, and outside of the specified protocol for modifying the ECP, a senior Company official, who is a retired United States Coast Guard officer, contacted former colleagues at the U.S. Coast Guard seeking their agreement with the Company's position concerning the definition of an ECP Major Non-Conformity and its application by the TPA.

---

[1] The term "Interested Parties," as defined in the ECP, refers to the United States Attorney's Office for the Southern District of Florida, the Environmental Crimes Section of the United States Department of Justice, the United States Probation Office for the Southern District of Florida, the Seventh Coast Guard District (dp), and the U.S. Coast Guard Office of Investigations & Analysis.

5. **Violation of Special Condition**; by failing to comply with the Required Compliance Program and failing to comply with Special Condition 2 (defendant and related entities shall not commit any further violations of the International Convention for the Prevention of Pollution from Ships, 1973 as modified by the Protocol of 1978 (MARPOL 73/78) or the laws of the United States). Specifically, (1) on or about December 16, 2018, the M/V Carnival Elation discharged plastic mixed with food waste in violation of MARPOL 73/78, Annex V, and the ECP in Bahamian waters; and (2) on or about December 18, 2018, the M/V Carnival Elation failed to maintain a Garbage Record Book in which all overboard discharges of garbage were accurately recorded, in violation MARPOL 73/78, Annex V, and the ECP.

6. **Violation of Special Condition**; by interfering with the implementation of the ECP, TPA audits, and the Court's supervision of probation, as set forth in the plea agreement, Special Condition 13, and Section VIII.B.1 of the ECP. Specifically, between on or about June 2017, and on or about December 4, 2017, the defendant and related entities: (a) conducted an undisclosed program to visit ships shortly in advance of audits required pursuant to the ECP and Special Conditions of Probation and for the purpose of finding and remedying environmental compliance issues and without disclosure of the findings to the TPA and CAM; and (b) violated the ECP Section I.G., by failing to promptly notify the Court, the CAM and the Interested Parties about the existence of the pre-audit vessel visit program.

## Exhibit B

Special Condition No. 13 of the judgment against Princess Cruise Lines, Ltd. shall be amended to read as follows:

13) *Required Notification — Breach of Compliance*:

    a) The defendant organization is to inform the United States Attorney's Office for the Southern District of Florida, the Environmental Crimes Section of the United States Department of Justice, the United States Probation Office for the Southern District of Florida, the U.S. Coast Guard (collectively, the "Interested Parties"), CAM, and TPA of any:

        i) breach of the ECP;

        ii) breach of the plea agreement;

        iii) violation of the conditions of probation;

        iv) violation of any Marine Environmental Protection Requirement;

        v) violation of any applicable United States (federal or state) environmental law;

        vi) violation of the Ballast Water Convention, the London Dumping Convention, or any future maritime environmental law convention to which the United States becomes a party and which goes into effect during the period of the defendant organization's probation; or

        vii) credible allegations, to include any Environmental Open Reports, involving a violation of the ECP or any Marine Environmental Protection Requirement or applicable international, flag state, port state, coastal state, or United States (federal, state or local) environmental law

involving any Covered Vessel or Covered Personnel (as defined in the ECP) as soon as reasonably practicable but no later than seven days of when the defendant organization learns of the occurrence. The notification shall include a description of the nature, date and time, and location, including the country, of the breach of compliance or violation. The defendant organization shall submit for approval to the Interested Parties, by June 30, 2019, a proposed process, including the criteria for determining which incidents to report and how they will be reported in compliance with this Special Condition.

    b) The defendant organization shall provide on a weekly basis to the CAM and TPA the complete and un-redacted internal HESS Weekly Flash Reports created by Carnival Corp. & plc. The Flash Reports shall include any violation of:

        i) any Marine Environmental Protection Requirement;

        ii)        applicable international environmental treaties; or

        iii)       United States (federal or state) environmental law

involving any Covered Vessel or Covered Personnel as defined in the ECP. The Flash Report shall describe the nature, date and time, and location (if available) of the incident; how the incident was reported (both internally and externally, including government and regulatory bodies); and the source of the information.

c) The defendant organization shall provide the Interested Parties, CAM, and TPA with the monthly reports submitted to the Office of Probation.

d) The defendant organization shall within seven days inform the Interested Parties, CAM, and TPA of any notifications or submissions regarding violations, whether communicated voluntarily (including any "self-reports") or pursuant to a legal requirement, made to any United States (federal or state) regulatory authority involving any violation of ECP or any Marine Environmental Protection Requirement or applicable United States (federal or state) environmental law involving any Covered Vessel or Covered Personnel.

e) The defendant organization and its related entities will not resolve any enforcement action with a United States federal or state regulatory authority related to an incident covered by section 13 until they: (i) inform the Interested Parties and (ii) inform the regulatory authority that Carnival Corporation & plc and its related entities are operating under a Court Supervised ECP in this case in the Southern District of Florida, including a reference to the case number.