---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

**In re Fotini Tsavousis Duncombe, Theodore Thoma,
Eric Forrer, and Ronn Buschmann,**

*Petitioners,*

-against-

**United States District Court
for the Southern District of Florida (Miami),**

*Respondent*

---

## PETITION FOR A WRIT OF MANDAMUS PURSUANT TO
## THE CRIME VICTIMS' RIGHTS ACT, 18 U.S.C. § 3771(d)(3)

---

Eric "Knoll" Lowney, WSBA 23457
(*pro hac vice pending*)
Smith & Lowney PLLC
2317 E. John St.
Seattle, WA 98112
Tel: (206) 860-2883
Fax: (206) 860-4187

Hannah Connor
Fla. Bar No. 125378
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel:   (202) 681-1676
Fax:  (805) 593-0946

Counsel for Petitioners Fotini Tsavousis Duncombe, Theodore Thoma,
Eric Forrer, and Ronn Buschmann

CORPORATE DISCLOSURE STATEMENT

Petitioners are individuals and natural persons, not corporations.

CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

This petition is filed by four individuals who have been harmed by illegal pollution from Carnival Corporation PLC's cruise ships, including the ships of its subsidiary, Princess Cruise Lines, LTD.  Petitioners are:

1.      Fotini Tsavousis Duncombe, a resident of the Commonwealth of the Bahamas;

2.      Theodore Thoma, resident of Alaska;

3.      Eric Forrer, resident of Alaska; and

4.      Ronn Buschmann, resident of Alaska.

Because this is a mandamus petition, the United States District Court for the Southern District of Florida (Miami) is technically the respondent. Fed. R. App. P. 21(b)(4).

This petition arises out of a criminal proceeding in the United States District Court for the Southern District of Florida (Miami) styled as *United States of*

i

*America v. Princess Cruise Lines, LTD,* Case No. 16-20897-CR-SEITZ.  Princess

Cruise Lines, LTD, Carnival Corporation PLC, and the United States of America

are interested parties.

　　*United States of America v. Princess Cruise Lines, LTD,* has been handled

by District Judges The Honorable Patricia A. Seitz and The Honorable Ursula

Ungaro.

　　Miami Herald Media Company ("MHMC"), publisher of *The Miami Herald*,

moved to intervene in the district court proceeding to obtain access to sealed

documents.  However, Petitioners do not believe that MHMC is technically an

interested party to this appellate proceeding.

## STATEMENT OF THE RELIEF SOUGHT

Petitioners Fotini Tsavousis Duncombe, Theodore Thoma, Eric Forrer, and Ronn Buschmann (collectively "Petitioners") respectfully petition this Court, pursuant to the Crime Victim's Rights Act ("CVRA"), 18 U.S.C. § 3771(d)(3), the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Appellate Procedure 21, for a writ of mandamus that vacates the settlement of probation violations approved by the United States District Court for the Southern District of Florida ("District Court") on June 3, 2019, in *United States of America v. Princess Cruise Lines LTD*, Case No. 16-20897-CR-SEITZ and remands and orders the District Court to afford victims their right to participate in the probation violation proceedings as guaranteed by the CVRA.

Nobody disputed that Petitioners suffered harm from the crimes; the only dispute was about whether polluting ships visited Alaskan and Bahaman waters. This is easily established in the public record. But if this Court is unable to make that factual determination, the Court should remand for the District Court to hold an evidentiary hearing on the locations where harm occurred from the criminal conduct, which will confirm that Carnival Corporation PLC's and Princess Cruise Lines, LTD's (collectively "Carnival") offenses caused harm to victims in Alaskan and Bahaman waters.

1

## ISSUES PRESENTED

1.      Did the District Court commit reversible error by summarily denying Petitioners their rights under the CVRA – without evidentiary inquiry, findings of fact, conclusions of law, or explanation – where Petitioners were harmed by Carnival's crimes in Alaska and the Bahamas?

2.      Should the Court vacate the Settlement Agreement and remand for the District Court to grant victims their CVRA rights, because the record showed that Carnival's criminal pollution occurred on at least five ships over a ten year period, and the ships were operating and polluting in the Bahamas and Alaska for much of that time?

3.      Alternatively, if the Court cannot find the facts going to Petitioners' victim status, should it remand for the District Court to conduct an evidentiary hearing on the locations of harm from the criminal conduct, and for entry of a legally sufficient order resolving the CVRA motion?

## INTRODUCTION AND SUMMARY OF APPEAL ARGUMENTS

The CVRA *guarantees* crime victims the rights to confer before the Government settles criminal charges and to be heard before the court considers such a settlement.  It is well established that district courts must respect these rights, even if it means slowing down the plea bargaining process. A district court's denial of CVRA rights is subject to prompt and meaningful appellate

2

review. The appeal is brought through a mandamus petition, which the appellate court must decide within 72 hours.

This case is unusual because the convicts are major corporations, and the criminal settlement at issue resolved probation violations by imposing penalties and additional probation terms. The four Petitioners submitted a motion for CVRA rights that was supported by detailed statements describing how they were victimized by Carnival's criminal conduct in Alaska and the Bahamas.

The District Court committed reversible error in denying Petitioners' CVRA motion. The District Court's failure to enter findings or conclusions or provide *any explanation* for denying CVRA rights violates the plain language of the CVRA and the Federal Rules, and undermines the right to prompt and meaningful appellate review guaranteed by the CVRA. The lack of explanation is especially troubling because the only argument made against Petitioners' CVRA status relied on an inaccurate statement of the facts and governing law. The CVRA provides for setting aside a sentence (or plea) where, as here, victims are wrongly denied CVRA rights. Indeed, vacating the Settlement Agreement is the only way to protect Petitioners' CVRA right to confer and be heard before the District Court rules.

The facts of this case provide the Court what it needs to remand with an order that the District Court recognize Petitioners' CVRA victim status.

3

Petitioners submitted detailed statements describing how they were harmed by Carnival's environmental crimes in Alaska and the Bahamas. Neither the Government nor Carnival contested that Petitioners had been harmed by illegal pollution in these waters.

Rather, the *only opposition* to Petitioners' victim status was the Government's legal arguments that (1) victims of crimes in Alaska and Bahamas have no rights under the CVRA because the Information did not specify that Carnival's crimes occurred in those geographic areas; and (2) victims of probation violations that constitute crimes have no rights under the CVRA.

Both of these arguments are legally wrong. This Court has recognized that the scope of CVRA is not limited by the Information. *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008). And the Supreme Court and the United States Sentencing Commission have recognized that victim's rights do attach to post-conviction crimes and proceedings. *Infra*, 28. The Government's arguments to cut victims out of the settlement process are contrary to the policy and plain language of the CVRA.

Applying the correct legal standard, the only disputed factual issue is where Carnival's crimes caused harm. But there can be no legitimate dispute over this issue and the Court can easily resolve it. By its own terms, Carnival's original 2016 plea agreement (the "Plea Agreement") resolved criminal conduct consisting

of illegal oil discharges from five Carnival ships over a ten years period. It is a matter of public record that all of these five ships operated in Alaska and the Bahamas during this time period.

However, if this Court is unable to establish that fact, the Court should remand the matter to the District Court to conduct an evidentiary hearing into the location of Carnival's crimes, with instructions on the applicable legal standards. The District Court should also be ordered to document its final decision on the CVRA motion in a legally sufficient order containing factual findings.

## FACTUAL STATEMENT

1.  **Carnival's original plea agreement resolved a decade of environmental crimes including illegal oil discharges into Alaskan and Bahaman waters.**

On December 1, 2016, Carnival entered into the Plea Agreement to resolve the Government's investigation into and potential prosecution of Carnival's decade-long pattern of environmental crimes. Appx. 1-35. The Plea Agreement states: "Defendant agrees to enter pleas of guilty to the following *representative charges. . .*" and lists one count of conspiracy, with four subparts including discharging pollution to navigable waters; four counts of violations of the Act to Prevent Pollution from Ships; and two counts of obstruction of agency proceedings. Appx. 1-36 (emphasis added).

The Plea Agreement referenced "representative charges" in recognition of

the fact that Defendant and the Government were settling criminal charges comprising a decade-long pattern of environmental crimes.  The Plea Agreement waived prosecution of all known environmental crimes:

> **8. *Non Prosecution of Additional Offenses***.  …  As part of this Agreement and solely because of the promises made by Defendant in this Agreement, ECS *agrees to forgo additional criminal prosecution in any district . . . against Defendant and Defendant's parent for: (i) any violations of the Clean Water Act*, as amended by . . . the Act to Prevent Pollution from Ships . . . relating to discharge of oil and oily water mixtures, and conspiracy to commit the same, . . . and *(ii) the Act to Prevent Pollution from Ships*, . . . relating to the failure to maintain accurate Oil Record Books, or related violations of Title 18, including making and using false statements and records, obstruction of justice, and conspiracy, in violation of 18 U.S.C. §§ 371, 1001, 1505, 1512, and 1519, before the date of this Agreement, and stemming from the operation of the *Caribbean Princess, Golden Princess, Coral Princess, Grand Princess*, and the *Star Princess*, *and any such violations stemming from the operation of any other vessel owned or operated by Defendant, Defendant's parent, or the subsidiaries, . . . and which are known to the government at the time of the signing of this Agreement.*

Appx. 1-45 – 1-46 (emphasis added).

In other words, the Plea Agreement *explicitly settled all of Carnival's known criminal violations* of the Clean Water Act and Act to Prevent Pollution from Ships.  *Id.*  The various documents submitted in support of the Plea Agreement outlined the crimes that the Government knew about and was settling through the Plea Agreement.

First, the Joint Factual Statement attached to the Plea Agreement stated that

6

"since 2005, one year after the *Caribbean Princess* started operations, illegal discharges of oil-contaminated bilge water were made from the *Caribbean Princess* and that the Oil Record Book for this vessel was systematically falsified in order to conceal the illegal discharges." Appx. 1-56.[1]

Second, the Joint Factual Statement noted that this same illegal practice occurred on four other of Princess Cruise Line's largest cruise ships:

> Four other 'Grand Class' vessels in the Princess fleet are known to have engaged in similar practices to the *Caribbean Princess* with regard to the dilution of oily bilge water with sea water during the use of the oily water separator and with regard to pumping graywater overflows back into the graywater system. Those ships were the *Golden Princess*, *Coral Princess*, *Grand Princess*, and the *Star Princess*. These ships sailed to and from numerous U.S. ports. Both of these practices resulted in overboard discharges in violation of MARPOL. Neither practice was recorded in the Oil Record Books for these vessels."

Appx. 1-64.

Third, the Plea Agreement contained an explicit settlement of crimes by Carnival and its subsidiaries for making and using false statements and records and obstruction of justice relating to improper discharges of oil and falsification of data *across their entire fleets.* The Plea Agreement contained a specific disclosure that

---

[1] The Joint Factual Statement noted that this practice "had been previously used on numerous of the ship's prior cruises to and from Ft. Lauderdale and the Caribbean during 2013. Prior to 2013, other bypass methods – detailed below – were used to accomplish the same purpose. The Oil Record Book was falsely maintained so as to conceal these deliberate violations of MARPOL from the U.S. Coast Guard." Appx. 1-58.

Carnival had discovered false recordkeeping of oily waters in an unidentified number of ships across Carnival and its subsidiaries' entire fleets. Appx. 1-47.

The Information, filed concurrently with the proposed Plea Agreement, noted that federal law makes it is a crime to violate the "MARPOL Protocol" to the International Convention for the Prevention of Pollution from Ships, and that Carnival's alleged discharges of oily waters and failure to properly keep records constituted such crimes. Appx. 1-21 (citing 33 U.S.C. §§ 1901, *et seq*.)

The Information recognized that these crimes had been ongoing since at least since 2005 – more than a decade at the time of the Plea Agreement.  Appx. 1-23.

Furthermore, the Government's Memo in Support of Plea Agreement made it clear that the United States was settling a decade worth of crimes on five Princess ships:

> It was widely known that the spills were being cleaned up by pumping them into the graywater system and then overboard. Princess ship-board engineers were aware of this practice and knew it violated MARPOL. A systemic problem like this, and one which the investigation determined took place on at least 5 ships, represents a failure in corporate management and culture.

Appx. 1-149.

Carnival's memorandum in support of the Plea Agreement likewise made it clear that the company admitted to crimes on all five ships, stating "Princess takes full and unequivocal responsibility for the crimes committed by its employees . . .

on the *Caribbean Princess* and the four other ships …" Appx. 1-131.

**2.  The Government and the District Court acknowledged that the plea resolved environmental crimes that caused widespread environmental harm.**

During the entirety of the original plea agreement proceedings,[2] the Government and the District Court acknowledged that Carnival's criminal behavior caused widespread environmental harm.  The Government noted Carnival's "deliberate pollution within the navigable waters, territorial sea and exclusive economic zone of the United States and elsewhere… dating back to 2005" had the effect of "polluting of the very environment upon which the company's livelihood depends." Appx. 1-146.  Further, "[r]outine and deliberate vessel pollution such as occurred in this case has been estimated to cause as much as eight times the amount of oil pollution each year as catastrophic spills such as the Exxon Valdez oil spill." Appx. 1-152.   Carnival also admitted that its crimes "placed in jeopardy the health of the oceans and marine environment." Appx. 1-131.

**3.  The original plea agreement required Carnival to implement procedures to protect air and water across its service area, including in Alaska and the Bahamas.**

The Plea Agreement placed Princess and Carnival on probation for five

---

[2] Notice was not provided to Victims in the original plea agreement proceedings and Victims were not heard.

years.  Appx. 1-43 (¶ e). The terms of the probation required the following special

conditions:

> (1) No Further Violations. Defendant agrees that it will commit no further violations of MARPOL 73/78, federal, state, or local law, and shall conduct all of its operations in accordance with environmental laws of the United States.
> …
> (3) Environmental Compliance Plan. Defendant agrees to develop, adopt, establish, implement, and fund the environmental remedial measures set forth in the Environmental Compliance Plan ("ECP"), attached hereto as Attachment B, during the term of probation, consistent with sentencing policies set forth in U.S.S.G. § 8D1.4.

*Id*. The Agreement was explicitly binding on Carnival and its subsidiaries. Appx.

1-44 (¶ 6).

The Government explained to the District Court that the probation terms

protected all aspects of the environment:

> …the compliance plan applies to all environmental standards. … It includes sewage. It includes gray water. It includes hazardous waste, solid waste. It includes garbage and plastic. It includes air pollution. All aspects of environmental law that are implicated by the operation of a cruise line are part of this plan. … This is, how does this cruise line maintain and achieve environmental compliance in all respects. …

Appx. 1-130. The Plea Agreement provided for a Court Appointed Monitor

("CAM") to ensure that Carnival complied with the probation conditions

protecting clean air and clean water. *See* Appx. 1-44.

> **4.     The Court Appointed Monitor found that Carnival violated probation through ongoing environmental crimes, impacting air and waters in Alaska and the Bahamas, leading to an effort to revoke probation.**

In the first two years of the probation, the CAM found that Carnival violated its probation by continuing to commit widespread environmental crimes, including illegal discharges of pollution into waterways of Alaska and the Bahamas. *See* Appx. 1-174 – 1-178 ("The negligent discharge of approximately 26,000 gallons of untreated graywater is a federal offense, namely a violation of the Certain Alaskan Cruise Ships Operation Act. 33 U.S.C. 1901.")

5.    **The Government and Carnival proposed to settle the probation violations including all underlying crimes.**

Again without any notice to or involvement of victims, Carnival and the Government made a deal to settle the probation violations and all underlying crimes known of at the time. *See* Appx. 2-50 (the "Agreement"). The Agreement reflected that the parties negotiated to narrow the scope of the probation violation charges. One of these charges was the illegal discharge of plastics to Bahaman waters:

> By failing to comply with the Required Compliance Program and failing to comply with Special Condition 2 (defendant and related entities shall not commit any further violations of the International Convention for the Prevention of Pollution from Ships, 1973 as modified by the Protocol of 1978 (MARPOL 73/78) or the laws of the United States). Specifically, (1) on or about December 16, 2018, the M/V Carnival Elation discharged plastic mixed with food waste in violation of MARPOL 73/78, Annex V, and the ECP in Bahamian waters; and (2) on or about December 18, 2018, the M/V Carnival Elation failed to maintain a Garbage Record Book in which all overboard discharges of garbage were accurately recorded, in violation MARPOL 73/78, Annex V, and the ECP.

11

Appx. 2-96.

The Government also formally charged Carnival with various schemes to undermine the environmental protections of the Plea Agreement, including failing to properly train staff and falsifying training records and conducting "swat" clean ups in advance of audits to hide non-compliance with probation terms. Appx. 2-65, 2-74.

Once again, the Agreement resolved probation violations for all known crimes. Appx. 2-57. The Government agreed not to pursue probation violation charges for any of these known crimes, including Carnival's widespread problem of illegally dumping plastics into the ocean. The Government's submission in support of the settlement of probation charges stated:

> Evidence in support of Count 5 shows that discharge of plastic from Carnival Elation is a part of a significant management problem occurring over many years and involving many ships despite full knowledge that such discharges are illegal and extremely harmful to the environment and marine life.

Appx. 2-104. Carnival acknowledged "there have been discharges and other releases made in violation of MARPOL during the period of probation that have not been reported to the country in the waters the violation occurred." Appx. 2-54. Other known crimes included falsification of environmental records on at least five ships. Appx. 2-86.

Thus, once again, the Settlement Agreement resolved criminal

accountability for Carnival's ongoing pattern of widespread criminal conduct.

**7.     Four victims from Alaska and the Bahamas moved to assert their rights under the CVRA (excluding restitution) supported by detailed victim statements.**

The four Petitioners filed a motion to assert their rights under the CVRA. Appx. 2-1, 2-34. Each of the four victims submitted a written statement describing how they have been harmed by Carnival's environmental crimes. Appx. 2-18 – 2-33; 2-38 – 2-41. Ms. Duncombe describes how her enjoyment of the beaches, waters, and air around her home in the Bahamas has been harmed by Carnival's pattern of pollution, including discharges of oil and trash in Bahaman waters — crimes encompassed by the original Plea Agreement and the later settlement of probation violations. Appx. 2-18. Messrs. Thoma, Forrer, and Bushmann — all longtime residents of Alaska— similarly detailed how they were harmed by the oil pollution that was the subject of the original Plea Agreement, including personal encounters with gross amounts of pollution while the men were fishing. Appx. 2-23 – 2-33; 2-38 – 2-41.

These victims sought to exercise their procedural rights under the CVRA, but did not seek any restitution. Appx. 2-1.

**8.     The Government refused to share the proposed plea agreement with the victims and opposed the victims' motion based upon an inaccurate representation of the facts and improper legal standards.**

13

The Government and Carnival actively sought to preclude participation by victims and other impacted members of the public by keeping the terms of the Agreement secret. Declaration of Knoll Lowney in Support of Writ of Mandamus ("Lowney Decl.") ¶ 2. The Government did not make the Settlement Agreement available to Petitioners or the public until about an hour before the June 3, 2019 hearing at which the District Court was to consider the Settlement Agreement. *Id.* ¶ 4. This prevented Petitioners from even seeing the Settlement Agreement before the hearing. *Id.*

Also, on the day of the hearing, the Government filed an opposition to victims' CVRA motion. Appx. 2-42. Disappointingly, the Government's opposition opposed the CVRA rights based upon an inaccurate representation of the facts of the case and the governing legal standard.

### a.   The Government asserted an incorrect legal standard for victim.

First, the Government did not dispute that the victims may have been harmed by Carnival's crimes, but rather argued for an incorrect legal standard:

> That [CVRA] definition [of victim] does not automatically confer victim status on anyone who may have been harmed by any criminal act of a defendant. Instead, courts have held that to qualify under the statute, a person must have been harmed directly and proximately by conduct underlying an element of the defendant's offense, with the focus being not any possible offense, but on the actual charged offense. Looking beyond the elements of the defendant's offenses to allegedly related criminal conduct would not only be contrary to the plain language of the statute, but it may also require courts in many cases to engage in extensive fact-finding to determine the full scope of a particular defendant's criminal conduct.

14

Appx. 2-44.

The Government argued that Petitioners, while apparently harmed, "have not provided any information directly linking their emotional or other inchoate injury specifically to *defendant's charged conduct.*" Appx. 2-46 (emphasis added). Moreover, the government argued that the CVRA's scope of protection was limited to the details of the "charged conduct" found in the four corners of the Information. *See id*. The Government therefore claimed that the victims did not have CVRA rights because, according to the information: (1) there was only a "sole vessel addressed by the charges," and (2) "neither Alaska nor the Commonwealth of the Bahamas are specifically identified as within the routing of the M/V Caribbean Princess at the relevant time." *Id*.

The Government's proffered legal standard is incorrect. The CVRA defines a crime victim without regard to the "charged offense." Rather a victim is a "person directly and proximately harmed as a result of the commission of *a Federal offense*." 18 U.S.C. § 3771(e)(2)(A) (emphasis added). Moreover, this Court has squarely rejected the Government's argument that victim status is limited by what is stated on the Information and held that victim status is based upon the full scope of harm resulting from the defendant's criminal conduct. *In re Stewart*, 552 F.3d at 1289.

15

**b.    The Government inaccurately represented the scope of the crimes in the original Plea Bargain.**

Second, the Government argued that the relevant crime settled in the original Plea Bargain involved only a "sole vessel" and without any indication of routing to Alaska or the Bahamas. Appx. 2-47. However, as discussed above, the Plea Bargain and the Joint Factual Statement explicitly recognized that the illegal conduct involved five ships illegally discharging oil over a ten year period. *See Supra* 8-9. *See also* Appx. 1-23; 1-149; 1-131. Those five ships regularly cruised in Alaskan and Bahaman waters during the ten year period. *Lowney Decl.,* ¶ 10.

The Government also erroneously argued that several of Carnival's environmental felonies, such as "the failure to maintain environmental records and obstructive conduct charges" were "documentation offenses that while significant, did not have direct and proximate impact on any specific Movant." *Id.* (citing the Information). This argument is erroneous because an element of Carnival's recordkeeping crimes —the failure to log pollution events— is the pollution event itself, which directly harms individuals such as Petitioners who depend on clean water for their livelihoods, health, and recreation.

**c.    The Government wrongly argued that victims of probation violations that constitute a crime have no CVRA rights.**

The Government wrongly argued that the CVRA does not apply to the Government's settlement of probation violations which constitute crimes. Appx.

16

2-46 (note 4).  This was the basis for arguing that the Court could ignore the undisputed evidence that Petitioner Ms. Duncombe was harmed by Carnival's pattern of plastic pollution in Bahaman waters. As discussed below, this Court, the Supreme Court, and the Sentencing Commission have stated otherwise.

9.    **The District Court summarily rejected Petitioners' motion, without argument, evidentiary inquiry, findings of fact, or conclusions of law, and suggested it agreed with the Government's erroneous arguments.**

Because the Government submitted its erroneous arguments only hours before the hearing, Petitioners had no opportunity to submit reply briefing. The District Court then denied Petitioners the opportunity to provide rebuttal argument at the hearing.  Appx. 2-112 – 2-113.  Instead, the District Court opened the hearing by summarily denying Petitioners' motion.  *Id*.  The District Court provided no explanation except to say it agreed with the Government, suggesting that the District Court accepted the Government's factually and legally erroneous arguments.  *Id*. The District Court's written order denying the CVRA motion lacks findings of fact, conclusions of law, or any explanation for the denial.  Appx. 2-107.

10.    **The Court refused to hear from Petitioners, including Ms. Duncombe, who traveled from the Bahamas for the hearing, before approving the Settlement Agreement.**

The District Court refused to hear from Ms. Dumcombe at the June 3 hearing, despite that she traveled from the Bahamas to be present in the courtroom.

17

Lowney Decl. ¶ 8. After denying the victims' rights under the CVRA, the Court did allow Petitioners' counsel to be heard, but then cut counsel off about half way through his presentation. *Id.,* ¶ 7. In any event, given that the victims did not have an opportunity to review the Settlement Agreement before the hearing, counsel could not represent their positions on it. *Id,* ¶ 4.

The District Court then entered an order approving the Settlement Agreement. Appx. 2-108.

## ARGUMENT

The District Court's summary rejection of the victims' motion failed the CVRA's mandates and constituted reversible error for numerous reasons:

**A.    Legal Background.**

The CVRA identifies the rights available to crime victims, including: "(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding . . . (5) The reasonable right to confer with the attorney for the Government in the case . . . (9) The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement." 18 U.S.C. § 3771(a)(4), (5), and (9). The CVRA should be "liberally construed within the confines of the rights guaranteed." *United States v. Rubin*, 558 F. Supp. 2d 411 (E.D.N.Y. 2008).

The plain language of the CVRA extends victim status to victims of "the commission of a Federal offense" without other limitations. 18 U.S.C. § 3771. This Court has adopted a two-step analysis for determining who is a victim under the CVRA. First, the Court must "identify the behavior constituting a federal offense" and then "identify the direct and proximate effects of that behavior on parties other than the United States. If the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA." *In re Stewart,* 552 F.3d at 1288.

Courts interpret the definition of "victim" in the CVRA to be at least as broad as the same term under the Mandatory Victims Restitution Act. *United States v. Sharp,* 463 F.Supp. 2d 556 (E.D. Va. 2006). This Court has "repeatedly rejected attempts to narrow the scope of 'victim'" under these statutes. *United States v. Edwards*, 728 F.3d 1286, 1293 (11th Cir. 2013) (quotations omitted)

The CVRA requires that "[t]he reasons for any decision denying relief under this chapter shall be clearly stated on the record." 18 US.C. § 3771 (b)(1).

The Government does not dispute that the CVRA applies to environmental crimes. *Lowney Decl. ¶* 3. Indeed, the CVRA specifically applies to crimes, like environmental crimes, that result in a large number of victims. 18 U.S.C. § 3771(d)(2); *In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008) (over 200 victims). *See also United States v. CITGO Petroleum Corp.,* 893 F. Supp. 2d 848, 853-54 (S.D.

19

Tex. 2012) (CVRA victims harmed by toxic pollution); *Parker v. United States Dist. Court,* 2009 U.S. App. LEXIS 10270 (9th Cir. 2009) (reversing *United States v. W. R. Grace*, 597 F. Supp. 2d 1157 (D. Mont. 2009), which denied victims status based on argument that environmental crime victims are not readily identifiable).

**B.      The District Court committed reversible error by summarily denying CVRA rights without adopting factual findings or conclusions of law and without providing any justification for the denial.**

The District Court's failure to provide any reasoning for its denial of CVRA rights constitutes reversible error.

First, the CVRA explicitly demands that "[t]he reasons for any decision denying relief under this chapter shall be clearly stated on the record." 18 US.C. § 3771 (b)(1).  It also provides that victims should assert their rights by motion, *id.* at (3), which in turn triggers Federal Rule of Criminal Procedure 12(d)'s requirement that "[w]hen factual issues are involved in deciding a motion, the court *must* state its essential findings on the record." (Emphasis added).  Here, the District Court summarily denied the motion without findings or any explanation.

Second, the District Court's failure to make any findings or provide any explanation undermines the CVRA's guarantee of prompt and meaningful appellate review.  The CVRA provides:

> **If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus**. The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal

Rules of Appellate Procedure. **The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed**, unless the litigants, with the approval of the court, have stipulated to a different time period for consideration. In deciding such application, the court of appeals shall apply ordinary standards of appellate review. In no event shall proceedings be stayed or subject to a continuance of more than five days for purposes of enforcing this chapter. **If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.**

18 U.S.C. § 3771 (3) (emphasis added).

Where, as here, a statute provides appellate review as "recourse" (meaningful review), this Court "requires the reasons for the district court's decision to be sufficiently apparent" and the district court's order "must demonstrate that the pertinent factors were taken into account." *United States v. Johnson*, 877 F.3d 993, 998 (11th Cir. 2017) (vacating and remanding for further consideration and explanation).

Even where the Court is reviewing the denial of an injunction under an abuse of discretion standard, it requires the district court to provide "a sufficient explanation of its ruling to allow us to engage in meaningful appellate review." *Lewis v. Fla. Dept. of Corr.,* 522 F.App'x 590, 592 (11th Cir. 2013). *See also Johnson v. Hamrick,* 196 F.3d 1216 (11th Cir. 1999) (vacating and remanding for specific findings because the "district court's findings were inadequate to permit any meaningful appellate review.")

This Court has been especially rigorous where, as here, the motion could impact criminal penalties, holding that, although decisions on early release are reviewed for abuse of discretion, this "is not simply a rubber stamp. … A court must explain its sentencing decisions adequately enough to allow for meaningful appellate review. Else, it abuses it discretion." *Johnson,* 877 F.3d at 997.

While this particular matter is one of first impression in this Court, the D.C. Circuit and Third Circuit have held that detailed findings are required in victims' actions. *See United States v. Mathis-Gardner,* 783 F.3d 1286, 1288-1289 (D.C. Cir. 2015) (requiring all rulings on victim protection act applications include specific findings on the relevant facts); *United States v. Logar,* 975 F.2d 958, 961 (3rd Cir. 1992) (requiring findings of fact under victim rights statute to allow appellate review)

These rules apply here because the CVRA provides for prompt and meaningful appellate review, and this Court has adopted a fact-specific two-step test for deciding who is a victim under the CVRA. *In re Stewart,* 552 F.3d at 1288. Yet, nothing in the District Court's oral ruling or written order give any indication as to whether or how the district court applied this Court's standards to the facts of this case. Appx. 2-107. This is particularly troublesome given that the only argument against CVRA rights was the Government's opposition brief, which relied on an incorrect legal standard and misconstrued the facts.

22

**B.    The Court should vacate the Agreement or instruct the District Court to do so.**

The Court should vacate the Agreement or instruct the District Court to do so because it was entered in violation of the CVRA. The CVRA mandates that "the court shall ensure that the crime victim is afforded" specific rights, including the right to confer and the right to be heard. 18 U.S.C. § 3771. The District Court denied both in this case.

The CVRA would be meaningless without the basic relief of vacating the order approving the Agreement until the District Court affords the victims their CVRA rights. Indeed, the CVRA shows a clear Congressional intent to give this Court the power to vacate a district court's sentencing order based upon the denial of CVRA rights. Specifically, the CVRA empowers the Court to re-open a sentence where, as here, victims asserted their CVRA rights before the hearing, and appealed the district court's denial within 14 days. 18 U.S.C. § 3771(5)(A), (B).[3] The same is equally, if not more appropriate in the context of an order modifying probation.

---

[3] The third requirement does not apply because the Agreement is not a plea. 18 U.S.C. § 3771(5)(C). However, if it did apply the requirement would be satisfied since Carnival did not plead to the highest offense charged. Indeed, the Agreement specifically negotiated down the formal charges from criminal contempt of court to a probation violation and resolved numerous unspecified crimes.

As the Ninth Circuit recognized in *Kenna v. United States District Court,* 435 F.3d 1011, 1017-18 (9th Cir. 2006), where a sentence is entered without providing a victim their right to be heard under the CVRA, **"the only way to give effect to [a victim's] right to speak as guaranteed to him by the CVRA is to vacate the sentence and hold a new sentencing hearing."** (Remanding for the district court to vacate the sentencing and noting that if the district court chooses not to reopen the sentence, the victim will have another opportunity to petition for mandamus.)

Likewise, the only way to respect Petitioners' CVRA rights in this case is to first vacate the order entering the Settlement Agreement.

**C.    The Court should remand with an order for the District Court to afford Petitioners their CVRA rights.**

Carnival did not oppose Petitioners' Motion for CVRA rights and the Governments' opposition was based largely upon its erroneous assertion that victims of Carnival's crimes in Alaska and the Bahamas have no rights under the CVRA.  The Government did not and could not dispute that Petitioners had been harmed.  The three Alaskan victims are involved in the fishing industry in area in which Carnival's cruise ships illegally pollute the water. Appx. 2-23 – 2-33; 2-38 – 2-41.  The Bahaman victim was harmed by oil and plastics in the area in which Carnival's cruise ships illegally discharged oil and plastics. Appx. 2-18 – 2-22.

24

And the Government and District Court acknowledged that Carnival's crimes caused negative impacts to the environment. *See, e.g.,* Appx. 1-152; 1-131. These four individuals have adequately demonstrated their rights under the CVRA.

The Government's arguments opposing Petitioners' victim status are legally and factually wrong as explained in section 8, *supra,* and further below.

The Government challenged Petitioners' victim status primarily because the Information did not "specifically" identify whether Alaska or the Bahamas was part of the route for one of the four ships at issue, the M/V Caribbean Princess. Appx. 2-46 (noting "although the ship was in Caribbean waters at times"). First, as already explained, the Information does not limit who qualifies as a victim under the CVRA. *In re Stewart.*

Second, the Government did not and could not assert that the M/V Caribbean Princess and the four other ships specifically identified as in the Plea Agreement were not in fact in Alaskan and Bahaman waters during the relevant time period **because they were**. The Information, Plea Agreement, and associated documents discuss illegal oil discharges that occurred over a ten year period on five different Princess vessels. Appx. 1-23; 1-149; 1-131. Publicly available information confirms that these vessels were in Alaskan and Bahama waters throughout the decade. For example, Princess Cruise Line's own cruise atlas for 2010 shows the Coral Princess, Golden Princess in Alaska, and the Caribbean

25

Princess in the Bahamas. Lowney Decl., Ex. A at 19-21 and 49.[4]  Its cruise atlas

for 2013, immediately before the environmental crimes were first discovered, show

that the Caribbean Princess and Grand Princess spent time in the Bahamas, and the

Star Princess, Coral Princess, Golden Princess, and Grand Princess cruised

throughout Alaska. *Id.* at Ex. B, 58-59, 22-31.[5]  According to a third party cruise

tracking organization, the Caribbean Princess took 13 trips to the Bahamas in

2013[6] before heading to England, where authorities discovered that the ship was

continuously and illegally discharging oil to the ocean environment. Appx. 1-27 –

1-29 (Information listing dates of six illegal oil pollution events during cruises to

and from Florida waters in 2012 and 2013). *See also* Lowney Decl., Ex. C (2014-

2015 Princess Cruise Atlas) and Ex. D (2015-2016 Princess Atlas) (showing

subject ships in Alaska and Bahamas).[7]  Neither Carnival nor the Government

could deny that the illegal pollution occurred in Alaska and the Bahamas.

---

[4] Princess Cruise Lines, Cruise Atlas (2010-11). *Available at*
http://www.goldenbaycruises.com/pdf/Princess_Cruises_Cruise_Atlas_2010.pdf
[5] Princess Cruise Lines, Cruise Atlas (2013-14) *available at*
http://www.kruzy.pl/extras/princess/pliki/princess2014.pdf
[6] Caribbean Princess Itinerary 2013, archived at
https://web.archive.org/web/20130828064059/http:/crew-
center.com/sites/default/files/ship/caribean-princess/caribean-princess-33112.pdf
[7]Princess Cruise Lines, Cruise Atlas (2014-15) *available at*
http://www.billmoniztravel.com/brochures/2014-2015_CruiseAtlas_082913.pdf ;
Princess Cruise Lines, Cruise Atlas (2015-16) *available at*
http://online.discoverbue.com.ar/DTS-descargas/Princess-Cruises-Atlas-de-
Cruceros-2015-y-2016-IN.pdf

There is likewise no real dispute over the fact that Carnival's environmental crimes during the probation period, including the M/V Carnival Elation's illegal discharges of plastic mixed with food waste in violation of MARPOL in Bahamian waters, harmed Ms. Dumcombe, who lives in the Bahamas and detailed her encounters with such trash on the beaches. Appx. 2-96; 2-18 – 2-22.

Rather, the Government erroneously argued that as a matter of law CVRA rights do not attach to probation violations constituting crimes. The Government has no legal support for this theory. The plain language of the CVRA extends victim status to victims of "the commission of a Federal offense" without other limitations. 18 U.S.C. § 3771. The CVRA does not limit "victim" status to charged offenses, much less originally charged offenses, and it expressly provides for victim participation in subsequent proceedings. *Id.* [8] In fact, the United States Sentencing Commission's Handbook on the CVRA states that victims of both the original and subsequent crimes have the CVRA rights in probation modification proceedings such as the one at bar. 2019 Primer on Crime Victims' Rights, Office of General Counsel, U.S. Sentencing Commission (citing *Johnson v. United States,*

---

[8] *See also Attorney General Guidelines for Victim and Witness Assistance* 8 (2011 ed., rev. May 2012) ("If the defendant is convicted, CVRA rights continue until criminal proceedings have ended. For example, CVRA rights continue through any period of incarceration and any term of supervised release, probation, community correction, alternatives to incarceration, or parole.").

495 U.S. 594, 700-01 (2000), for the proposition that "[t]he CVRA extends to a victim's right to be reasonably heard at post-sentencing proceedings.") Moreover, "if the violation of probation or supervised release involves a new crime, the revocation proceeding may well be considered to 'involve' the new crime of the accused and, thus, confer CVRA rights to the victims of the substantive offense that is the basis of the violation." *Id.*

The Government's argument that only victims of the original crimes that were specifically charged and to which the defendant pled guilty may qualify for CVRA victim status relies on case law interpreting the Victim and Witness Protection Act ("VWPA"), all of which was abrogated when Congress amended the VWPA with the Mandatory Victims Restitution Act of 1996 ("MVRA"). Specifically, *Hughey v. United States,* 495 U.S. 411, 418 (1990), held the pre-amendment VWPA only protected victims of the "offense of conviction." However, Congress "all but eviscerated *Hughey* with respect to crimes involving schemes" when it enacted the MVRA to broaden the definition of "victim" in response to *Hughey. United States v. Edwards*, 728 F.3d 1286, 1292 (11th Cir. 2013).

The CVRA affords rights to an even broader category of victims, without reference to whether the Federal offense was charged or convicted, and without limitation as to when the offense occurred. 18 U.S.C. § 3771. *See also United*

*States v W. R. Grace*, 597 F Supp 2d 1157 (D. Mont. 2009) (Holding that "whether there are crime victims under [the CVRA] does not depend on whether person government has accused of committing federal offense is innocent or guilty."); *United States v. Dickerson*, 370 F.3d 1330, 1342-43 (11th Cir. 2004) (under MVRA's narrower definition, criminal conduct occurring outside the statute of limitations period confers victim rights).

Although the MVRA is still narrower than the CVRA, cases interpreting the MVRA's definition of victim are instructive. *See Sharp,* 463 F.Supp. 2d 556. In cases involving a scheme, conspiracy, or pattern of criminal activity, the MVRA extends victim status to persons harmed by acts or conduct that is not so long as the conduct is merely related to the criminal scheme. *Edwards*, 728 F.3d at 1293; *United States v. Brown*, 665 F.3d 1239, 1253 (11th Cir. 2011); *United States v. Dickerson*, 370 F.3d 1330, 1342-43 (11th Cir. 2004). Here, Carnival's pollution in Alaskan and Bahaman waters is at the very heart of its decades-long pattern of environmental crimes, which expressly include conspiracy to violate federal pollution control laws.

Finally, the Government derision of Petitioners' injuries as "inchoate" or insufficient should be rejected. This argument finds no support in the text of the CVRA and courts have held that individuals harmed by pollution qualify as victims under the CVRA. *See supra,* 19-20. It is also well-established that the injuries

29

Petitioners have suffered constitute "injury-in-fact," cognizable in federal courts. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000); *Sierra Club v. Johnson*, 436 F.3d 1269, 1279 (11th Cir. 2006); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1280 (11th Cir. 2015) ("plaintiff need not prove that their injury can be traced to specific molecules of pollution emitted by the alleged polluter" to satisfy Article III).

In short, there is no factual or legal support for the Government's arguments that Petitioners are not victims, nor for the District Court's conclusory denial. The Court should remand with an order that the Court grant Petitioners their CVRA rights.

**D.    Alternatively, the Courts should remand for an evidentiary hearing and factual findings.**

Alternatively, if the Court believes that there is a factual question as to the location of the crimes, then the Court should remand for evidentiary inquiry. This is consistent with this Court's fact-based test for identifying victims under the CVRA. This test requires the District Court to identify the behavior constituting commission of a federal offense, and then identify the direct and proximate effects of that behavior on parties other than the United States. *In re Stewart,* 552 F.3d at 1288.

The Court should also require the District Court to issue a legally sufficient order identifying and resolving factual and legal disputes and explaining its reasoning. *See* Fed. R. Crim. P. 12(d); 18 U.S.C. § 3771(b)(1).

If the Court remands, it is important to provide guidance to the Court and the Government about the following legal standards.

**(1)     Victims of Carnival's "criminal conduct" —includes crimes resolved through the Agreement and related criminal schemes —are entitled to CVRA rights regardless of what the charging documents specify.**

The Government's opposition brief erroneously claimed that CVRA rights are determined from the charged conduct and harm identified in the four corners of the information.  This Court has explicitly rejected such a narrow restriction on victim rights:

> The CVRA, however, does not limit the class of crime victims to those whose identity constitutes an element of the offense or who happen to be identified in the charging document. The statute, rather, instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties. Under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission.
>
> Here, therefore, petitioners are not automatically disqualified as victims merely because they are not mentioned in the information. Because the criminal activity directly and proximately harmed petitioners, they are victims and enjoy the rights the CVRA creates.

*In re Stewart*, 552 F.3d at 1289.

As *In re Stewart* recognizes, nothing in the CVRA definition places such a limitation on who is a victim. The CVRA employs "an intentionally broad definition because all victims of crime deserve to have their rights protected, *whether or not they are the victim of the count charged."* Senate Debate at S4270 (statement of Sen. Kyl) (emphasis added); *id.* (Sen. Feinstein agreeing with same).

This Court should not endorse a legal test that allows the Government and a criminal defendant to cut off CVRA rights through a lenient settlement. For example, here the Government and Carnival negotiated for the scope of the formal charges to be *substantially narrower* than the settled criminal conduct. Under the Government's argument, it would have negotiated away victims' statutory rights under the CVRA. That cannot be the law.

In addition, the "charged offense" doctrine that the Government relied upon from *Hughey v. United States,* 495 U.S. 411 (1990), stemmed from the earlier language of the VWPA, which was eviscerated by the enactment of the MVRA, and is irrelevant to the CVRA. Furthermore, when courts outside this circuit have applied the "charged offense" limitation, it has been to prevent a *Booker* violation of defendants' Sixth Amendment right to a jury trial in the context of restitution claims. This Court has repeatedly held that "*Booker* does not apply to restitution orders." *United States v. Davis,* 177 F. App'x 895, 900 (11th Cir. 2006).

**(2)    The Plea Bargain involved five vessels over a ten year period.**

The Government unfortunately also misled the District Court about the extent of the conduct admitted to by Carnival and the extent of the Plea Bargain's settlement.  The Government's brief stated that the victims had no rights under the CVRA because the Information reflected crimes from only a "sole vessel" and no crimes in Alaska or the Bahamas. That is simply untrue, as discussed above. *See supra* at 8-9, 16.

**(3).    Victims of probation violations constituting illegal conduct are entitled to CVRA rights in conjunction with probation revocation proceedings and settlement of probation revocation charges.**

The Government erroneously argued that the probation violations of illegal discharges of plastics to Bahaman waters did not create CVRA victims, apparently arguing that the CVRA does not give rights in post-sentencing proceedings. As discussed above, Congress, the United States Supreme Court, this Court, and the Sentencing Commission have decided otherwise.  *See supra* 27-29.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court vacate the District Court's orders approving the Settlement and denying Petitioners' CVRA rights, and remand this matter to the District Court to afford Petitioners' rights to confer and be heard before approving any settlement or plea.

RESPECTFULLY SUBMITTED this 17th day of June, 2019

SMITH & LOWNEY, PLLC
By:  */s/ Eric "Knoll" Lowney*
     Eric "Knoll" Lowney, Esquire
WSBA No. 23457 (*pro hac vice* pending)
2317 E. John Street,
Seattle, WA 98112
Email: knoll@smithandlowney.com
Tel: (206) 860-2883
Fax: (206) 860-4187


By:  */s/ Hannah Connor*
     Hannah Connor, Esquire
Fla. Bar No. 125378
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel:   (202) 681-1676
Fax:  (805) 593-0946

Counsel for Petitioners Fotini Tsavousis
Duncombe, Theodore Thoma, Eric Forrer,
and Ronn Buschmann

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the word limit of Fed. R. App. P. 21(d)(1)

because, excluding the parts of the document exempted by Fed. R. App. P. 32(f)

and Rule 21(a)(2)(C), this document contains 7,745 words.

2.      This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because

this document has been prepared in a proportionally spaced typeface using

Microsoft Word in 14-point Times New Roman font.

DATED this 17th day of June, 2019


*/s/ Hannah Connor*
Attorney for Petitioners

CERTIFICATE OF SERVICE

I, Hannah Connor, declare under penalty of perjury of the laws of the United States that the foregoing is being served on the following counsel for all interested parties and the District Court by filing the same in the United States District Court for the Southern District of Florida's electronic docket in *United States of America v. Princess Cruise Lines LTD*, Case No. 16-20897-CR-SEITZ via CM/ECF:

Benjamin E. Rosenberg      Benjamin.Rosenberg@dechert.com

Brendan Herrmann      Brendan.Herrmann@dechert.com

Catherine J. MacIvor      cmacivor@fflegal.com, lschrader@fflegal.com, pbagley@fflegal.com, rkeith@fflegal.com

Conrad A. Johnson      Conrad.Johnson@dechert.com

David N. Kelley      david.kelley@dechert.com

David Oscar Markus      dmarkus@markuslaw.com, caguero@markuslaw.com

Paul T. Bagley      pbagley@fflegal.com, lschrader@fflegal.com, rkeith@fflegal.com

Sanford Lewis Bohrer      sbohrer@hklaw.com, estarlin@hklaw.com

Scott Daniel Ponce      sponce@hklaw.com, estarlin@hklaw.com

Thomas Austin Watts-Fitzgerald      thomas.watts-fitzgerald@usdoj.gov, mariana.clavijo@usdoj.gov, usafls-hqdkt@usdoj.gov

DATED this 17th day of June, 2019

*/s/ Hannah Connor*
Attorney for Petitioners