UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 16-20897-CR-SEITZ

UNITED STATES OF AMERICA

    v.

PRINCESS CRUISE LINES, LTD.,

    Defendant.
_____/

## STATUS REPORT BY PRINCESS CRUISE LINES, LTD. TO BE CONSIDERED DURING STATUS CONFERENCE ON OCTOBER 2, 2019

| | |
|---|---|
| Markus/Moss PLLC<br>40 N.W. Third Street<br>Penthouse One<br>Miami, FL 33128 | DECHERT LLP<br>1095 Avenue of the Americas<br>New York, NY 10036 |

*Attorneys for Defendant Princess Cruise Lines, Ltd.*

Defendant, Princess Cruise Lines, Ltd. ("Princess"), the wholly owned subsidiary of Carnival Corporation & plc ("Carnival") (collectively referred to herein as the "Company"), respectfully submits this status report in advance of the status conference scheduled for October 2, 2019. In addition to the narrative provided in this report, attached as **Exhibit A** is the Company's quarterly tracking chart summarizing the status of corrective and preventive actions taken in response to final audit findings by the Third Party Auditor (the "TPA") and various other incidents.

## I.  Culture Survey

Carnival appreciates receiving the results of the Environmental Compliance Culture Survey conducted by PROPEL SAYFR, and it recognizes that the results of the survey demonstrate that the Company has much work to do to improve its culture. Carnival will not attempt to explain away an assessment that concludes that its compliance culture is less mature than 73% of other companies in the maritime and similar industries; it will strive to change the situation.

Certain of Propel's findings, as well as the Court Appointed Monitor's ("CAM") commentary, are particularly illuminating and will inform Carnival's response going forward. For example, Carnival recognizes the need to address the phenomenon observed by Propel and the CAM that the Company gives the impression that it cares exclusively about employees' professional competency at the expense of fostering a welcoming culture. *See* CAM Report at 17, 25. Although demanding professional competence is essential in an industry in which safely navigating millions of passengers across the globe is of paramount concern, the Company can evolve to excel in both competence and culture. Carnival is encouraged by Propel's observation that a higher than average number of employees used the survey to provide comments expressing positivity and pride. Based on this, Carnival believes that, despite the poor overall results, there are pockets of a positive culture that can provide a strong foundation for the work ahead.

Carnival has retained a consulting firm to help it analyze and design a program to address the issues raised in Propel's survey. Although the efforts to improve the culture of a company with more than 120,000 employees will inevitably extend beyond the term of the ECP, Carnival hopes appreciably to improve its culture by the time Propel conducts the second stage of its survey at the end of the ECP.

## II.     Restructured Ethics & Compliance Department

Carnival has provided the Court with several submissions explaining that it is improving its compliance function by creating a corporate-wide Ethics & Compliance Department led by its newly-hired Chief Ethics & Compliance Officer ("CECO"), Peter Anderson. The Company's Environmental Corporate Compliance Manager ("ECCM"), Chris Donald, will continue to lead Carnival's environmental compliance initiatives and will report directly to Mr. Anderson. Carnival's submissions culminated in a final action plan outlining its restructuring, which Carnival submitted on September 13. The final plan reflects Carnival's adjustments in response to comments received from the CAM and the TPA about the Company's initial plan.

The CAM has continued to raise concerns about the final version of Carnival's action plan. These concerns primarily relate to the authority of the CECO and the ECCM and their ability to exercise substantive control over the Company's financial planning process. The Company welcomes the CAM's continued assessment of these issues. Carnival is confident the CECO and ECCM have the necessary authority contemplated in the ECP and the agreement resolving Princess's probation violations that will address the CAM's concerns. The Company will make any necessary adjustments as it observes how the relationships among these executives and the other members of Carnival's senior management unfold in practice. Carnival looks forward to demonstrating to the CAM, the Court, and the public that it has adopted effective ways of working

when it comes to protecting the environment, and providing the resources necessary to achieve those goals.[1]

The Company will not burden the Court by repeating the details of its compliance restructuring plan, and Mr. Anderson will be available to address any questions the Court has about the restructuring at the October 2 status conference.

### III. Restructuring Investigations Department

The Court has noted the slow pace of Carnival's progress in restructuring its investigations department to create its new Incident Analysis Group. As directed by the Court, the head of the Incident Analysis Group will be available at the October 2 status conference. The CAM correctly notes that the benchmark dates in the recommended restructuring timeline that an outside consultant proposed to Carnival in late 2018 have lapsed. *See* CAM Report at 46. Once Carnival decided to hire an external candidate to lead the new department rather than to promote from within, the Company determined that it would be best for that new candidate to participate in the restructuring, even though that would lead to some delays in the restructuring timeline.

As the CAM explained, the new head of the Incident Analysis Group has been working on drafting a significant volume of new procedures to provide greater guidance to an expanded team of investigators. *See* CAM Report at 51. These procedures will outline a method for root cause analysis, and they will encourage investigators to avoid simply attributing incidents to human error, without also looking into potential deficiencies in Carnival's procedures or training. The

---

[1] The CAM notes that although Carnival's initial plan included the ECCM in the list of people who will comprise the CECO's Executive Compliance Committee, the ECCM was inadvertently omitted from the revised list set forth in the final version of the plan. *See* CAM Report at 38. This was an oversight, and Carnival confirms that the ECCM will be a member of the committee.

3

department's investigators will begin receiving training that conforms to these new principles before the end of this year.

### IV.     Food Waste Management

The ECCM, Chris Donald, has led groups of Tiger Teams that visited 30 ships to assess the manner in which the Company handles food waste. Based on the reviews these teams conducted, the ECCM provided the CAM, TPA, and Interested Parties with a list of specific actions aimed to improve how Carnival manages food waste, with particular attention to the proper disposal of non-food items such as plastic. These actions include implementing specific procedures, testing new types of equipment, and evaluating the feasibility of changes to Carnival's food procurement process, among other things. These tasks will be completed according to the timetables specified in the plan that the ECCM provided to the CAM, TPA, and Interested Parties.

One important aspect of the changes is Carnival's plan to use new food waste digesters, which are bioreactors that eat food and produce an effluent that is treated as gray water. These digesters will reduce the likelihood of non-food items being discharged with food waste because non-food items are not eaten by the digester and can be picked out and discharged properly. Carnival is testing different types of food digesters and will rapidly install them once testing is complete.

In addition to adjusting the process by which Carnival manages waste onboard its ships, the Company is also working to reduce the amount of food waste it creates and single-use plastics it consumes. In furtherance of that effort, Carnival has calculated the amount of single-use plastic items that it procured in fiscal year 2018, which it will use as a baseline to assess its progress towards the 50% reduction target in the agreement resolving Princess's probation violations. *See* DE 134. During the first two weeks of October, Carnival will also implement a new process for measuring the weight of food waste, which will enable the Company to measure food waste across

its Brands in a uniform manner going forward so that Carnival can measure its compliance with its 10% reduction target for food waste. *Id.*

The ECCM will be available at the October 2 status conference to answer any questions that the Court may have about Carnival's work to manage the disposal of food waste.

### V.  Environmental Incidents & Metrics

The CAM notes that improper discharges and other environmental incidents have continued to occur on Carnival's ships. Many of the specific incidents that the CAM identified in his report occurred on Holland America Group ships while operating in Alaska. *See* CAM Report at 89. Holland America Group has commissioned two third-party studies that began in late 2018 to address this problem: one that sought to identify numerous factors that contribute to improper discharges and another that specifically assessed the workload of crew members on Holland America Group ships. Holland America Group has developed a series of tasks designed to address the issues revealed by these studies, and the implementation of those tasks is in progress.

As directed by the Court, Carnival has exchanged proposals with the Department of Justice about how to measure different types of environmental incidents and other environmental performance indicators throughout the remainder of the ECP. Carnival has already been providing the CAM, TPA, and Interested Parties with measures of certain waste streams on a quarterly basis pursuant to the ECP, and it will draw upon this process to inform the Court about its performance. Carnival also tracks data about environmental incidents and initiatives and compiles that data in a quarterly *HESS, Technical, Regulatory, and Sustainability Report*, which it makes available to senior management and the HESS Committee of the Board of Directors. Attached as **Exhibit B** is a summary of that information prepared by Carnival's Chief Maritime Officer, Vice Admiral (ret.) William Burke.

5

Carnival has also taken steps to improve the manner in which it reports environmental incidents to federal and state regulators in the United States and to each ship's flag state. As required by the agreement resolving Princess's probation violations, this effort culminated in a new group of procedures in Carnival's Global HESS management system. Carnival published the final version of these procedures on September 18, 2019. As with Carnival's plan to restructure the Ethics & Compliance Department, the Company made adjustments to the new procedures in response to comments provided by the CAM and the TPA, and the CAM has noted that some of his concerns remain. *See* CAM Report at 95. Carnival will continuously assess whether these procedures prove to be effective in practice and will make whatever adjustments are necessary to ensure compliant reporting to regulatory authorities in the United States and its ships' flag states.

*  *  *

## VI. Conclusion

The team at Carnival believes that it has taken substantial steps to improve its environmental compliance efforts. Of course, the culture survey conducted by PROPEL SAYFR indicates that the Company still has a long way to go to reach the standard to which it holds itself. The Company is ready and willing to put its full effort towards improving. Several members of Carnival's senior management will be available at the upcoming status conference to answer any questions the Court has about the topics discussed in this report and the CAM Report.

Dated: September 25, 2019
Miami, Florida

Respectfully submitted,

MARKUS/MOSS PLLC
By: */s/ David Oscar Markus*
David Oscar Markus (FBN 119318)
dmarkus@markuslaw.com
40 N.W. Third Street
Penthouse One
Miami, FL 33128
Tel: (305) 379-6667

and

David N. Kelley (pro hac vice)
Benjamin E. Rosenberg (pro hac vice)
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500

*Attorneys for Defendant*