**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 16-20897-CR-PAS

UNTIED STATES OF AMERICA,

    Plaintiff,
vs.

PRINCESS CRUISE LINES, LTD.,

    Defendant.
_____/

**ORDER RE: October 16, 2020, Status Conference**

On July 29, 2020, this Court held a quarterly Status Conference via virtual means due to the ongoing COVID-19 pandemic.  Before the hearing, the Court received the Third Annual Report of the Court Appointed Monitor ("CAM") [DE 191], the Third Annual Report of the Third Party Auditor ("TPA") [DE 193], and the Quarterly Status Report of Princess Cruise Lines, Ltd. ("Princess") [DE 196].  Based on the discussion during the hearing and subsequent discussions among the Parties, the CAM, and the TPA, on August 10, 2020, the Court entered an Order removing the requirement for the CAM to submit a Quarterly Report by September 18, 2020, and requiring that "[i]n lieu of the September 2020 CAM quarterly report, the CAM and Carnival Corporation & plc (the 'Company') shall engage in communications sufficient to allow the CAM to inform the Court of the Company's compliance with the Terms and Conditions of Probation."  [DE 199].  Because no CAM Quarterly Report will be submitted before the next quarterly Status Conference, scheduled for October 16, 2020 [DE 174], the Court looks to Carnival to have a meaningful discussion of its progress at the October hearing.

Based on the information provided in the CAM March 2020 Quarterly Report [DE 183] and CAM Third Annual Report [DE 191], the Court has been made aware of the significant impacts of COVID-19 on the Company's operations and financial resources.  As the Company

has recognized, despite these impacts, it must continue to comply with the law and the Terms and Conditions of Probation.  At both the April 24, 2020, and the July 29, 2020, Status Conferences, the Company stated its commitment to compliance, despite its present challenges.  The Company's stated goal is that, when ships resume guest operations, they will "come back stronger and better equipped" and "better able to sustain compliance in the long term."  *See* [DE 189 at 5] (quoting April 2020 Probation Supervision Report, Attachment 5, at 2); [DE 196 at 6].

Accordingly, it is ORDERED:

At the October 16, 2020, Status Conference, the Company shall be prepared to report on:

1) The status of the following items in the Draft Pause Priorities Plan (updated August 21, 2020) for all Covered Vessels.  On or before Friday, October 9, 2020, the Company shall submit to the Interested Parties, CAM, TPA and USPO a document providing the status of these items on a ship-by-ship basis:

    a. <u>Pollution Prevention Equipment</u>
        i. Shipboard and shoreside preparations (*e.g.*, equipment purchases, piping reconfigurations) for carrying out the commitment to install food waste digesters on ships within 60 days of return to service;
        ii. Installing the full set of food waste digesters per the January 2020 plan and Court submission;
        iii. Identifying and assessing repairs needed to improve reliable operation of pollution prevention equipment and proposing schedules for completion of work, as well as completing repairs based on these identified repair needs;
        iv. Completing all significant repairs to pollution prevention equipment;
        v. Completing Advanced Air Quality System leak repairs;
        vi. Repairing/replacing regular leaking piping/components to reduce the volume of bilge water generated; and
        vii. Repairing major pipe system changes to reduce the volume of bilge water generated.

    b. <u>Spare Parts</u>
        i. Providing a full set of critical environmental spare parts for pollution prevention equipment.

    c. <u>Staffing</u>
        i. Ensuring a full Table of Personnel or crew complement in deck and technical teams before returning to service; and
        ii. Ensuring a designated engineer for Advanced Air Quality Systems is onboard equipped ships before returning to service.

2

      d. <u>IT Support and Voyage Planning</u>
- i. Developing and implementing the new voyage and environmental planning software tool.

      e. <u>Waste Offload Support</u>
- i. Assessing each waste vendor in accordance with the new procedure, with priorities on early itineraries, and, where required and if feasible, conducting site visits.

2) The status of Company compliance efforts in the following areas:

      a. <u>Internal Investigations Program</u>
- i. Appointment of a new head of the Incident Analysis Group, and a current job description for the role, including areas of responsibility, authority, independence, and priorities. If the person for this role has been selected prior to the hearing, that individual should make the presentation to the Court. If they have not, the Company should be prepared to describe the status of its efforts to fill this position;
- ii. Program documents, including: (1) the "new and detailed plan for strengthening the Incident Analysis Group" under development. *See* Draft Pause Priorities Plan (Aug. 21, 2020) at 16; (2) the investigation manuals under development, including key topics that the manuals will cover; (3) protocols (if any, beyond those in the procedures analyzed in the CAM Third Annual Report [DE 191 at 186-91]) for the review and revision of investigation reports, including criteria for the review of reports by different stakeholders and guidance delineating the role of report reviewers at the operating lines and All Brands Group; (4) the training on investigation report-writing and the investigative templates/forms under development; and (5) the investigator competencies under development;
- iii. Structures and processes in place designed to ensure the independence and autonomy of the Incident Analysis Group;
- iv. A method or system for tracking and trending of investigation data and findings (if any, beyond what is described in the procedures analyzed in the CAM Third Annual Report [DE 191 at 191-92]), including examples of how this approach has been or will be implemented;
- v. Investigator training courses (if any, beyond the computer-based training course, the CSMART Environmental Excellence course for Environmental Officers, and the report-writing training under development) being developed or implemented for Level 1, Level 2, and/or Level 3 investigators, including CSMART training courses; and
- vi. A plan or specific work steps for audit by RAAS of the Incident Analysis Group function in 2021 (or sooner timeframe).

3

b. <u>Corporate Compliance Culture</u>
   i. Development and delivery of new compliance or culture training for members of the Boards of Directors and Company leadership.

c. <u>Management of Change</u>
   i. Development and implementation of a corporate-wide management of change procedure.

d. <u>Repeat Incidents and Investigation and Audit Findings</u>
   i. Actions to identify, analyze, and address systemic or root causes of repeat incidents and investigation and audit findings related to:
      1. Voyage planning;
      2. Recordkeeping. *See* [DE 193 at 25-26] (TPA recommendation that "[t]he Company should identify systemic issues that are causing logbook errors, missing signatures, and data"); and
      3. Reliability of Advanced Air Quality Systems. *See* [DE 193 at 26] (TPA finding that Advanced Air Quality System failures were "the most notable failure for a Major Non-Conformity of Pollution Prevention Equipment in ECP Year Three audits," including failures due to "severe water leaks or wastage of the exhaust piping," as well as self-reported incidents involving "failure of the gas analyzer, faulty sensors, and other part failures" resulting in both air and water pollution incidents).

DONE AND ORDERED in Miami, Florida, this 8th day of September, 2020.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record

4